[No. E033084. Fourth Dist., Div. Two. June 22, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC CHARLES LEWIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 3.

### COUNSEL

Lewis A. Wenzell, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Rhonda L. Cartwright-Ladendorf, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

## 1. Introduction

A jury convicted defendant of kidnapping,[1] plus an enhancement for a principal being personally armed with a firearm;[2] torture;[3] and assault with a deadly weapon.[4] The jury acquitted him of the charge of forcible oral copulation.[5] Defendant admitted the allegations of having served two prior prison terms.[6] The court sentenced defendant to seven years in prison plus a life sentence.

On appeal, defendant contends the trial court committed several instances of instructional error related to duress and torture. He also asserts he could not be convicted of torture under a theory of aiding and abetting. We disagree and affirm.

## 2. Facts

Maria Zamora shared a studio apartment with defendant and paid him rent. On December 25, 2002, she was released from jail after being in custody for two weeks for writing bad checks. The next morning she left the apartment to visit her mother-in-law's house where her son lived. She left from there to walk to the police station and pick up her purse.

Her progress was halted when two cars, a Ford and Lexus, screeched to a stop in front of her. All four occupants were African-American men. The Ford was driven by David Kelly and defendant was the passenger. The Lexus contained Tick (Xavier Allen) and Darrell. Kelly jumped out and put a gun to her head. Tick and Darrell, also brandishing guns, joined him. They ordered her, "Get in the car, bitch," and pushed her into the Ford with defendant. Zamora asked defendant what was happening and he said, "You'll find out."

The men took her to the police station but she could not retrieve her purse without an appointment. The men drove her back to defendant's apartment.

---

[1] Penal Code section 207, subdivision (a). All further statutory references are to the Penal Code.

[2] Section 12022, subdivision (d).

[3] Section 206.

[4] Section 245, subdivision (a)(1).

[5] Sections 288a, subdivision (c)(2), and 664.

[6] Section 667.5.

Once there, Tick and Darrell began hitting and slapping her and beating her with an aluminum bat. Because they thought she had stolen a half-pound of marijuana from them, they attacked her for nearly two hours, causing fractured ribs, a collapsed lung, a broken femur and patella, and a concussion. At the beginning of the assault, Kelly left. Defendant told Tick and Darrell that Zamora had taken the marijuana from the apartment storage area.

Finally, Darrell said, "Let's go. This bitch is gone." But Tick said she was still alive and he intended to "finish" her. He then struck her on the head. Defendant went outside to check if it was safe for Darrell and Tick to leave. Before Darrell and Tick could force Zamora to engage in oral copulation, defendant warned them to go.

After their departure, Zamora begged defendant to call 911, which he did after about 15 minutes. Defendant told the 911 dispatcher and the police that Zamora had been robbed and beaten by a Black man and two Mexicans. Zamora told the police defendant knew the assailants. Defendant then altered his story and said Zamora had come to his apartment with three men. While he was in the bathroom, he heard screaming and came out to find the men leaving and Zamora bleeding on the floor.

Zamora was hospitalized for two and one-half weeks. She had to have a tube placed in her lung for breathing and a rod inserted in her leg.

Defendant's version of what happened is that Tick, Darrell, and Kelly came to his apartment and threatened him with guns. They forced him to join them by threatening to kill him and his family. He denied the men were looking for marijuana they had given him. Instead, the men thought Zamora had $2,000 belonging to them. After they seized Zamora and brought her back to the apartment, Tick grabbed and shook Zamora. Defendant thought Tick was "playing" and went into the bathroom. When defendant emerged after some minutes, Zamora was bleeding on the floor. Defendant did not see the men beat Zamora. He called 911 as soon as he could. He did not tell the police he had been threatened with guns.

### 3. Duress[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 882.

## 4. Torture

Defendant's third and fourth arguments are that the court failed to give instructions on battery[14] and aggravated battery[15] as lesser included offenses of torture and that defendant could not be convicted of torture on a theory of aiding and abetting.

Based wholly on defendant's version of the story, in which he went in the bathroom while the beating was occurring, defendant argues on appeal there was no evidence he knew the others intended specifically to cause cruel or extreme pain and suffering.[16] Therefore, defendant contends the court should have given a sua sponte instruction on lesser included offenses.

The People counter that battery is not a lesser included offense of torture because torture can be committed without touching, force, or violence, which are required elements of battery. For example, torture exists not only where there is direct infliction of injury, but also where injury results from enforced deprivation, such as withholding food and water, causing starvation.

It is well established that the trial court has a duty to instruct on the principles of law applicable to a case, including any recognized defenses and lesser included offenses.[17] A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense such that the greater cannot be committed without also committing the lesser.[18]

Battery is "any willful and unlawful use of force or violence upon the person of another."[19] An aggravated form of battery occurs when the battery results in serious bodily injury.[20] To establish battery resulting in serious bodily injury, the People must prove: (1) a person used physical force or violence against another person; (2) the use of force or violence was willful and unlawful; and (3) the use of force or violence inflicted serious bodily injury on the other person.[21]

Section 206, the torture statute enacted in 1990, states in relevant part: "Every person who, with the intent to cause cruel or extreme pain and

---

[14] Section 242.

[15] Section 243, subdivision (d).

[16] CALJIC No. 9.90.

[17] *People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094].

[18] *People v. Breverman, supra,* 19 Cal.4th at page 154.

[19] Section 242.

[20] Section 243, subdivision (d).

[21] CALJIC No. 9.12.

suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture." As so defined, torture has two elements: (1) the infliction of great bodily injury on another; and (2) the specific intent to cause cruel or extreme pain and suffering for revenge, extortion or persuasion or any sadistic purpose.[22]

Count 3 of the information alleged that defendant "did unlawfully and with the intent to cause cruel and extreme pain and suffering for the purpose of revenge, extortion, persuasion and for a sadistic purpose, inflict great bodily injury as defined in Penal Code section 12022.7, upon . . . Zamora."

■ Although there are no published California cases on the matter, we find the People's argument persuasive. The statutory definition of torture does not require a direct use of touching, physical force, or violence, but instead is satisfied if the defendant, directly or indirectly, inflicts great bodily injury on the victim. Thus a defendant may commit torture without necessarily committing a battery. Further, nothing in the allegations of the information in support of the torture count establishes that defendant used force or violence against Zamora. Accordingly, battery is not a lesser included offense of torture under either the elements test or the accusatory pleading test and the court was not required to instruct the jury on battery as a lesser included offense of torture.

We are also convinced any instructional error on this issue was harmless. The physical evidence showed Zamora suffered a prolonged and extremely violent beating. It is not reasonably likely or probable the jury would have believed defendant's story that he stepped into the bathroom for a few minutes and, when he came out, he was surprised to discover Zamora a bloody pulp on the floor.

Defendant's final argument is he could not be convicted of torture as an aider and abettor unless he personally inflicted great bodily injury, as defined by section 12022.7, on the victim. Although he has waived this issue by not raising it below,[23] we consider it briefly.

■ Section 12022.7, subdivision (f), defines "great bodily injury" as a significant or substantial physical injury. That is unquestionably what occurred here. The "personal infliction" requirement is not part of the definition of "great bodily injury" but is located in the other subdivisions, (a) through (e), which describe under what circumstances a defendant will be subject to an additional and consecutive term of imprisonment. Section 206's reference

---

[22] *People v. Baker* (2002) 98 Cal.App.4th 1217, 1223 [120 Cal.Rptr.2d 313].
[23] *People v. Jennings* (1991) 53 Cal.3d 334, 357 [279 Cal.Rptr. 780, 807 P.2d 1009].

to section 12022.7 is not ambiguous.[24] It does not give defendant an opening to argue that section 206 requires defendant to have personally inflicted the torture in the same way that section 12022.7 requires there be personal infliction of injury for the statute to operate.[25] Defendant has not identified any affirmative legislative intent to exempt an aider and abettor in torture from liability for prosecution.[26] Nor does there seem to be any reason why one who facilitates torture, as defendant did here, should be less culpable than the actual torturers.

### 5. Disposition

The judgment is affirmed.

Hollenhorst, Acting P. J., and Richli, J., concurred.

On July 21, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 27, 2004.

---

[24] *People v. Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].
[25] *People v. Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182].
[26] *People v. Fraize* (1995) 36 Cal.App.4th 1722, 1726 [43 Cal.Rptr.2d 64, 43 Cal.Rptr. 64].