Filed 10/7/16  P. v. Spence CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>GERALD SPENCE,<br><br>    Defendant and Appellant. | C074941<br><br>(Super. Ct. No. 12F07031) |

Convicted by jury of torture and other crimes associated with a brutal attack on his cohabitant, defendant Gerald Spence appeals.  He contends:  (1) his waiver of his right to counsel was not knowing and intelligent because the trial court did not advise him of the various sentencing possibilities; (2) the court erred by not instructing on lesser included offenses of torture; (3) denial of advisory counsel at the hearing on his prior convictions violated his right to counsel; (4) his prior conviction for assault with a deadly weapon

1

does not qualify as a strike; and (5) the court erred by not giving a unanimity instruction related to one of the counts. Finding no prejudicial error, we affirm.

FACTS AND PROCEDURE

The victim, A.H., was a 54-year-old preschool teacher at the time of the crimes in 2012. She learned she was HIV positive in 1994. She informed defendant of her HIV status in 2011 before they became romantically involved in early 2012. Defendant eventually moved in to A.H.'s residence and shared a bedroom with her, engaging in unprotected sex with her many times. A.H. weighed about 127 pounds, and defendant was substantially larger. The relationship was volatile, and defendant became more controlling. He moved out and back in to the residence a few times.

In the summer of 2012, defendant grabbed A.H. by the neck. She was not injured, and defendant did not attack her again until the crimes at issue in this case occurred in October 2012.

On October 28, 2012, A.H. was in her backyard when defendant arrived. She greeted him, and he responded by shaking his finger at her and saying, "I'm sick of you. I'm sick of you." Defendant picked up A.H. and threw her into a garbage can, which tipped over. After he threw her into the garbage can, he picked up a five-gallon water bottle and hit her in the head with it numerous times. A.H. tried to stand up, but defendant punched her and shoved her back down to the ground. He also stomped on her with his boots.

While A.H. was still on the ground, defendant pulled her up by her shirt and told her to take off her clothes. She began to comply, but defendant pulled her bra off her. When she was completely naked, defendant directed her to get down on the ground and crawl like a dog. Calling her a "bitch," he made her crawl through dog feces. Defendant threw A.H.'s clothes at her and told her to put them back on. After she dressed, he choked her, telling her, "Bitch, I'll snap your neck." A.H. had difficulty breathing but did not lose consciousness.

2

When defendant stopped choking A.H., she fell to the ground. Defendant bound A.H.'s hands and feet with duct tape, saying, "It's a good day to die," and, "I'll burn you up." A.H. thought she was going to die.

When defendant went into the house, A.H. took the duct tape off her feet and ran into the front yard where she asked passersby to help her. But the passersby left after defendant came out of the house.

Defendant and A.H. sat down on the front step of the house, and defendant told A.H. that there were several women who wanted to beat her for the way she had treated him. Defendant then struck A.H. in the eye and dragged her into the house by the back of her shirt.

Inside the house, defendant dragged A.H. into the bedroom and hit her in the head with a lamp, knocking her down. Defendant pushed her onto the bed and told her to undress again, which she did. Wielding a knife, defendant then tied her up with rope, put underwear in her mouth and duct tape over her mouth, and put a hat over her face as she lay on the bed face up.

Holding a golf club, defendant threatened to put it inside her and told her that he was going to torture her for a few days. Defendant then swung the golf club and hit A.H. with it three or four times in the thigh and back, causing A.H. to feel excruciating pain.

Eventually, defendant left the room. And later in the night, he returned to the room and untied A.H. In the morning, A.H. told defendant she had to go to work, so he gave her keys to her. She went to work, but was then taken to the hospital.

A physical examination revealed that A.H. sustained three fractured vertebrae in the lumbar area and a broken rib. She also had widespread contusions and bruising. She remained in the hospital for four days and required a walker to assist her in moving around for six weeks. She also had lingering pain and weakness from the attack at the time of trial in 2013.

A jury convicted defendant of:

3

- count one—torture (Pen. Code, § 206), with a special finding of personal use of a deadly weapon (Pen. Code, § 12022, subd. (b)(1));

- count two—infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)), with special findings of personal use of a deadly weapon (Pen. Code, § 12022, subd. (b)(1)) and infliction of great bodily injury (Pen. Code, § 12022.7, subd. (e));

- count three—assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), with a special finding of infliction of great bodily injury (Pen. Code, § 12022.7, subd. (e));

- count four—infliction of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)); and

- count five—making a criminal threat (Pen. Code, § 422; count five).

The trial court found that defendant had two prior convictions for serious felonies.

The court sentenced defendant to consecutive indeterminate terms of 25 years to life under the "Three Strikes" law for counts one (torture) and five (criminal threat). The court also imposed two consecutive determinate terms of five years for prior serious felony convictions (Pen. Code, § 667, subd. (a)) and a consecutive one-year term for personal use of a deadly weapon (Pen. Code, § 12022, subd. (b)(1)). The court stayed the remaining counts under Penal Code section 654. As a result, the aggregate sentence is composed of a determinate term of 11 years, followed by a consecutive indeterminate term of 50 years to life.

## DISCUSSION

### I

### Faretta *Waiver*

At arraignment on an amended information, defendant notified that court that he elected to represent himself. During a *Faretta* hearing (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562]), defendant was advised of the dangers of self-representation.

As part of that advisement, the trial court told defendant that the maximum penalty for his offenses was "life in prison." Defendant also signed a written "Record of Faretta Warnings," in which he was advised that he faced "Life" as the penalty for the offenses, if convicted. As noted, defendant was convicted and sentenced to a determinate term of 11 years, followed by an indeterminate term of 50 years to life.

On appeal, defendant argues that his waiver of counsel was not knowing and intelligent, and therefore violated his right to counsel, because the trial court did not "go[] over the potential range of punishments that [defendant] faced if convicted of the charges. [Defendant] was told that the maximum punishment he faced was life in prison (with a chance for parole), where he actually was faced with a maximum of 11 years on the determinate sentence, plus 50 years to life on the indeterminate sentence."

We rejected the argument that the trial court must do more than advise a defendant of the maximum punishment he faces under the charges he faces at the time he makes a request to represent himself. (*People v Jackio* (2015) 236 Cal.App.4th 445.) We therefore conclude that defendant's contention is without merit because the trial court properly advised defendant that the maximum punishment for his crimes was life in prison.[1]

---

[1]    After briefing was completed in this case, defendant filed a letter with an additional citation to *People v. Cross* (2015) 61 Cal.4th 164 (*Cross*). In that case, the California Supreme Court reversed a conviction because the trial court did not give guilty plea advisements when the defendant admitted a prior conviction, which exposed him to an additional year on his sentence. The court reasoned that, because the admission (made by stipulation) established a fact exposing the defendant to a greater penalty, it had "definite penal consequences," and therefore required the guilty plea advisements. (*Id*. at p. 175.) This case is distinguishable from *Cross* because (1) this case does not involve a guilty plea or admission of a fact that had a definite penal consequence and (2) the trial court in this case, unlike the trial court in *Cross*, advised defendant of the maximum punishment he faced. Therefore, *Cross* is unhelpful to defendant.

II

*Instructions on Lesser Included Offenses*

Defendant contends that the trial court erred by not instructing the jury sua sponte concerning battery and battery with serious bodily injury as lesser included offenses of torture. We conclude that, even assuming without finding that the trial court erred, any such error was harmless.

The Court of Appeal (Fourth App. Dist., Div. Two) rejected this argument in *People v. Lewis* (2004) 120 Cal.App.4th 882 (*Lewis*). In that case, the court wrote:

"It is well established that the trial court has a duty to instruct on the principles of law applicable to a case, including any recognized defenses and lesser included offenses. A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense such that the greater cannot be committed without also committing the lesser.

"Battery is 'any willful and unlawful use of force or violence upon the person of another.' An aggravated form of battery occurs when the battery results in serious bodily injury. To establish battery resulting in serious bodily injury, the People must prove: (1) a person used physical force or violence against another person; (2) the use of force or violence was willful and unlawful; and (3) the use of force or violence inflicted serious bodily injury on the other person.

"[Penal Code s]ection 206, the torture statute enacted in 1990, states in relevant part: 'Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in [Penal Code s]ection 12022.7 upon the person of another, is guilty of torture.' As so defined, torture has two elements: (1) the infliction of great bodily injury on another; and (2) the specific intent to cause cruel or extreme pain and suffering for revenge, extortion or persuasion or any sadistic purpose.

6

"Count 3 of the information [in *Lewis*] alleged that defendant 'did unlawfully and with the intent to cause cruel and extreme pain and suffering for the purpose of revenge, extortion, persuasion and for a sadistic purpose, inflict great bodily injury as defined in Penal Code section 12022.7, upon . . . [the victim].'

" . . . The statutory definition of torture does not require a direct use of touching, physical force, or violence, but instead is satisfied if the defendant, directly or indirectly, inflicts great bodily injury on the victim. Thus a defendant may commit torture without necessarily committing a battery. Further, nothing in the allegations of the information in support of the torture count establishes that defendant used force or violence against [the victim]. Accordingly, battery is not a lesser included offense of torture under either the elements test or the accusatory pleading test and the court was not required to instruct the jury on battery as a lesser included offense of torture." (*Lewis, supra,* 120 Cal.App.4th at pp. 887-888, fns. omitted.)

The *Lewis* court's holding relating to the elements test applies equally here. Under the elements test, battery and battery with great bodily injury are not lesser included offenses of torture. (*Lewis, supra,* 120 Cal.App.4th at p. 888.)

Under the accusatory pleading test, the facts of this case differ slightly from the facts of *Lewis*. In this case, unlike in *Lewis*, the information alleged that defendant personally used a deadly weapon (a golf club) while inflicting great bodily injury. Thus, the information alleged a direct use of physical force.

Nonetheless, we need not determine whether the trial court had a duty to instruct on the lesser included offenses of battery and battery with great bodily injury because, even if there was a duty to so instruct, any error here was harmless under the state standard.

We review an erroneous failure to instruct on lesser included offenses for prejudice according to the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Beltran* (2013) 56 Cal.4th 935, 955 (*Beltran*).) " '[U]nder *Watson*, a defendant

7

must show it is reasonably probable a more favorable result would have been obtained absent the error.' [Citation.]" (*Beltran, supra*, at p. 955.) "[T]he Watson test for harmless error 'focuses not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result.' [Citations.]" (*Id*. at p. 956, italics omitted.)

Here, the jury credited the evidence of defendant's egregious and prolonged attack on A.H. He terrorized her, beat her, subdued her, humiliated her, threatened her, seriously injured her, and then left her tied up and in terrible pain. He told her that other women wanted to beat her for the way she had treated him and implied that he was beating her because she was HIV positive and had unprotected sex with him. Defendant asserts on appeal that the jury may have concluded that defendant acted only out of anger, and not revenge or sadism, if it had been presented with the battery instructions. But that scenario is unlikely under the facts of this case. Defendant's attack on A.H., coupled with his statements to her before and during the attack, made it clear to the jury that he intended to cause cruel or extreme pain and suffering for revenge or some other sadistic purpose. Any error in not instructing on lesser included battery offenses was harmless.

III

*Denial of Advisory Counsel at Strike Hearing*

Defendant contends that his right to counsel was violated, even though he represented himself, because advisory counsel was not present during the bifurcated court trial of the prior serious felonies. The contention is without merit.

" '[T]he right to counsel guaranteed by both the federal and state Constitutions includes, and indeed presumes, the right to effective counsel [citations], and thus also

8

includes the right to reasonably necessary defense services. [Citations.]' [Citation.]" (*People v. Blair* (2005) 36 Cal.4th 686, 732 (*Blair*).)

"As for the Sixth Amendment, [the California Supreme Court has] recognized that depriving a self-represented defendant of 'all means of presenting a defense' violates the right of self-representation. (*People v. Jenkins* [(2000)] 22 Cal.4th [900,] 1040 [(*Jenkins*)] [citation].) Thus, 'a defendant who is representing himself or herself may not be placed in the position of presenting a defense without access to a telephone, law library, runner, investigator, advisory counsel, or any other means of developing a defense.' (*Jenkins, supra,* 22 Cal.4th at p. 1040.) . . . In the final analysis, the Sixth Amendment requires only that a self-represented defendant's access to the resources necessary to present a defense be reasonable under all the circumstances. (See [] *Jenkins, supra,* 22 Cal.4th at pp. 1040-1041.)" (*Blair, supra,* 36 Cal.4th at p. 733.) "[T]he crucial question underlying . . . defendant's constitutional claim[] is whether he had reasonable access to the ancillary services that were reasonably necessary for his defense." (*Blair, supra*, 36 Cal.4th at p. 734.) To prevail on such a claim, the defendant must show error and resulting prejudice. (*Id.* at p. 736.)

Although defendant elected to represent himself, the trial court appointed advisory counsel before trial. Defendant acknowledges that advisory counsel was present in court during the trial of the substantive charges, but he asserts that advisory counsel's absence at the court trial on the prior serious felonies was constitutional error. The assertion is without merit because (1) defendant fails to establish that he was not afforded "reasonable access to the ancillary services that were reasonably necessary for his defense" (*Blair, supra*, 36 Cal.4th at p. 734) and (2) he fails to establish prejudice.

Defendant had the services of advisory counsel even if counsel was not present during the bifurcated trial on the prior serious felonies. It is not necessary for advisory counsel to be present in the courtroom at all times. In fact, the courts "never have held that advisory counsel must be present during the entire trial." (*Blair, supra,* 36 Cal.4th at

9

p. 725.) Defendant offers no reasonable explanation for why advisory counsel's absence from the courtroom during the hearing on prior serious felonies, without more, supports the contention that he was not afforded reasonable access to this ancillary service.

Also, defendant makes no attempt to establish prejudice. Instead, he claims that the absence of advisory counsel from the courtroom is presumptively prejudicial and requires reversal. To the contrary, *Blair* requires a showing of prejudice under these circumstances (*Blair, supra*, 36 Cal.4th at p. 736), and we are bound by that precedent. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

IV

*Prior Serious Felony*

Defendant contends the trial court improperly found that his prior 2006 conviction for violation of Penal Code section 245, subdivision (a) [assault with deadly weapon or by force likely to produce great bodily injury] was a serious felony based on the fact that he used a deadly weapon. (Pen. Code, § 1192.7, subd. (c)(31) ["assault with a deadly weapon" as a serious felony].) He reasons that, since the crime can be committed without using a deadly weapon, the finding by the later trial court that he used a deadly weapon in committing the crime constituted double jeopardy. While he acknowledges that precedents of the California Supreme Court (see, e.g., *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*)) allow the trial court to look to the entire record of conviction in determining whether a prior conviction was for a serious felony, he claims the California Supreme Court must "revisit the rule" in light of later United States Supreme Court cases. The contention has no merit because defendant, in the prior proceeding, admitted the truth of a personal deadly weapon use enhancement in connection with that conviction for assault with a deadly weapon.

Not all prior convictions for a violation of Penal Code section 245, subdivision (a) qualify as serious felonies under the Three Strikes law. (*People v. Winters* (2001) 93 Cal.App.4th 273, 280.) "The language of [Penal Code] section 1192.7(c)(31) is clear that

10

it includes as 'serious felonies' only those [Penal Code] section 245(a)(1) assaults that involved a specified weapon or were made against a peace officer or a firefighter. The statute does not incorporate other types of section 245(a)(1) assaults, which thus do not qualify as 'serious felonies' unless they fall within the purview of some other provision of section 1192.7, subdivision (c)." (*Ibid.*) Therefore, a violation of Penal Code section 245, subdivision (a) is a strike when it is an "assault with a deadly weapon." (Pen. Code, § 1192.7, subd. (c)(31).)

At the court trial on the issue of whether defendant had the prior 2006 conviction for violation of Penal Code section 245, subdivision (a) and, if he did, whether the prior conviction qualified as a strike, the prosecution introduced an amended abstract of judgment from that case. The abstract reflected that defendant was convicted pursuant to a plea of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) with an enhancement for personal use of a deadly weapon (Pen. Code, § 12022, subd. (b)(1)). Therefore, defendant's use of a deadly weapon in violating Penal Code section 245, subdivision (a) was adjudicated in the prior case. He admitted the personal use enhancement. Because his use of a deadly weapon was adjudicated in that case, there was nothing for the trial court in the current case to do except to note that he was convicted of "assault with a deadly weapon" as a serious felony under Penal Code section 1192.7, subdivision (c)(31).

Defendant asserts that the amended abstract of judgment showing the enhancement for personal use of a deadly weapon could not be used as the basis for finding that he used a deadly weapon because the original abstract of judgment in the case showed an enhancement for infliction of great bodily injury, not for personal use of a deadly weapon. We disagree. The last abstract was the operative one.

This assertion requires a brief summary of the proceedings leading up to the 2006 conviction for assault with a deadly weapon. Defendant was convicted after a court trial in 2000 of a violation of Penal Code section 245, subdivision (a)(1). An abstract of

11

judgment was issued, reflecting the conviction for violation of Penal Code section 245 with an enhancement for infliction of great bodily injury under Penal Code section 12022.7, subdivision (a).[2] Later, however, the United States District Court for the Eastern District of California granted defendant's petition for habeas corpus, finding that his *Faretta* waiver in that case had not been knowing and intelligent. (*Spence v. Runnels* (E.D.Cal., May 23, 2006) 2006 U.S. Dist. LEXIS 33083, 1.) The case therefore returned to the trial court where defendant pleaded guilty to a violation of Penal Code section 245, subdivision (a)(1), with a personal deadly weapon use enhancement under Penal Code section 12022, subdivision (b)(1).

Defendant gives us no reason to doubt that the amended abstract of judgment accurately reflected his guilty plea and admission of the personal deadly weapon use enhancement in 2006. And he did not challenge the truth of the amended abstract at trial in this case. The existence of a prior abstract of judgment, superseded by the amended abstract of judgment after further proceedings, is unremarkable and does not call into question the veracity of the amended abstract of judgment. Accordingly, the trial court in this case properly relied on the amended abstract of judgment to find that defendant's 2006 conviction for assault with a deadly weapon was a serious felony.

Under these circumstances, defendant's argument that the California Supreme Court must revisit its decision in *Guerrero* fails because defendant admitted using a deadly weapon when he pleaded guilty in 2006 to violating Penal Code section 245, subdivision (a). In any event, even if we were to ignore defendant's admission to the

---

**2** It appears that the listing of a great bodily injury enhancement but not an enhancement for personal use of a weapon was a clerical error because, on defendant's appeal of this conviction, this court wrote that the court found true both a great bodily injury enhancement and a personal weapon use enhancement. We also held that there was substantial evidence that defendant used a deadly weapon (an empty gin bottle used like a missile) and that he inflicted great bodily injury. (*People v. Spence* (Jan. 31, 2002, C037090) [nonpub. opn.], 2002 Cal. App. Unpub. LEXIS 4355.)

personal deadly weapon use enhancement, we are bound by *Guerrero* on the issue of whether the trial court could look to the entire record of conviction to determine whether the prior conviction was for a serious felony. (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455.)

Likewise, defendant's contention that the trial court's finding that his prior conviction was a serious felony constituted double jeopardy is without merit because his weapon use was adjudicated in the prior proceeding. And, in any event, the double jeopardy clause does not prohibit retrial of enhancement provisions. (*Monge v. California* (1998) 524 U.S. 721 [141 L.Ed.2d 615]; *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350].)

We conclude there is no arguable merit to defendant's 40-page argument on these matters.

V

*Unanimity Instruction*

Defendant contends that the trial court erred by not instructing the jury that it must agree unanimously on what conduct constituted assault with a deadly weapon, the crime charged in count three. The contention is without merit because the prosecutor made an election concerning what conduct constituted the crime charged.

We review a claim of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) In a criminal case, a jury verdict must be unanimous. (*People v. Collins* (1976) 17 Cal.3d 687, 693.) The jury must agree unanimously that the defendant is guilty of a specific crime. (*People v. Diedrich* (1982) 31 Cal.3d 263, 281.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a

13

reasonable doubt that a defendant must have done something sufficient to convict on one count." (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472, italics omitted.) Even if a unanimity instruction is not requested, the trial court has a duty to give the instruction whenever the evidence warrants it and the prosecution does not make an election. (*People v. Russo, supra,* at p. 1132; *People v. Carrera* (1989) 49 Cal.3d 291, 311, fn. 8.)

The prosecutor made the election during closing argument; therefore, there was no need for a unanimity instruction. He argued: "Count Three. Again, One, Two and Three, you can find and should find the defendant guilty of all three. However, they're alternate of one another. So if you think, wait, isn't this the same thing? Essentially, it is. They're just alternate statements of the same event. This says, to prove that the defendant is guilty, I must prove that he did an act with a deadly weapon, that being the golf club, that would result in the application of force. [¶] [A.H.] tells you, he winds it up and he hits her in the leg with it. Obviously, any reasonable person knows that what they're doing is going to apply force to the other person. The defendant did that act willfully, did it on purpose, and when he acted, he was aware that it would cause force to be applied to someone. You know when you swing a golf club at somebody's leg, it's going to hit the leg. [¶] And four, when he acted, he had the ability to apply force with the deadly weapon. What that's saying is this law doesn't require him to make contact. He could have swung and missed, completely missed her leg, and be guilty of this. But we've added, again, the enhancements, and that is the extra allegation of great bodily injury for somebody that you're in a relationship with, and use of a deadly weapon, in this case, the golf club."

In the opening brief, defendant ignored the prosecutor's election, writing that "[t]he prosecution did not make an election between the acts which could have constituted the charged crimes." Belatedly, in his reply brief, defendant posits several reasons we should not accept the prosecutor's election of the conduct made during closing argument. He argues that (1) the election did not give him adequate notice

because it was made at the end of trial; (2) the election did not inform the jurors of their duty to find him guilty only on that act; and (3) the trial court did not ratify the election.

These arguments were forfeited because he did not make them in his opening brief. In that brief, he argued that the prosecutor made no election, thus requiring a unanimity instruction. The Attorney General responded by pointing out that an election was made. Having argued only that no election was made, defendant cannot use his reply brief to raise different issues about the prosecutor's election. To allow this untimely proffer of new issues would be unfair to the Attorney General, who has had no opportunity to respond. (*Varjabedian v. Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

In any event, the new arguments are without merit. The prosecutor focused the jury on defendant's use of the golf club to hit A.H. in the leg as the basis for count three, assault with a deadly weapon. Considering this closing argument, we are confident that the jury's verdict was unanimously based on that conduct and not some other assault on A.H.

Because we conclude the prosecutor elected what conduct constituted the crime charged and informed the jury, we need not consider the parties' arguments concerning whether the conduct fell within the continuous course of conduct exception to the requirement for a unanimity instruction or whether any error was prejudicial.

## DISPOSITION

The judgment is affirmed.

                                                 NICHOLSON     , Acting P. J.

We concur:

     DUARTE        , J.

     HOCH          , J.

15