Filed 12/22/20  P. v. Campos CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERTA RAYECHELLE CAMPOS,<br><br>        Defendant and Appellant. | A157672<br><br>(Napa County<br>Super. Ct. No. 18CR002525) |

Roberta Campos (appellant) appeals her convictions, following a jury trial, for resisting an executive officer (Pen. Code, § 69)[1] and misdemeanor petty theft (§ 484, subd. (a)).  We agree with appellant's contention that the trial court failed to instruct the jury on a lesser included offense, and reverse in part.

---

[1] All undesignated section references are to the Penal Code.

1

# BACKGROUND

*Law Enforcement Testimony*

On August 4, 2018, Deputy Sheriff Anthony Heuschel was meeting with Walmart security agents on an unrelated case. The security agents were watching appellant on security cameras. As Heuschel watched the cameras, he saw appellant with what appeared to be new clothing in her bag as she exited the store. Appellant refused to stop when asked by one of the security agents, and Heuschel pursued her.

When Heuschel reached appellant, he told her Walmart security agents were accusing her of shoplifting and asked her to return to the store. She denied shoplifting and showed him her purse, and Heuschel repeated his request that she work it out with the store. Appellant was holding a lit cigarette in one hand and Heuschel twice asked her to put the cigarette down, but she refused. He asked her to sit on the curb; she refused. Appellant was "loud," "irate," and refusing to cooperate.

Heuschel told appellant she was under arrest and grabbed her wrist. She "stiffened" her arm and tried to pull away; concerned that she was going to hit him with the lit cigarette, Heuschel pushed appellant on the hood of a nearby car. He grabbed her other wrist to dislodge the cigarette, tried unsuccessfully to bring her hands behind her back, and pulled her to the ground. During this time, Heuschel was telling appellant she was under arrest and had to comply; she told him she was not going to cooperate.

Once appellant was on the ground, Heuschel tried to control appellant's arms but was unsuccessful. He kneeled on her to get her on her back as she struggled underneath him, cursing and continuing to refuse to comply. Appellant threw her elbow back and hit Heuschel, causing him to lose his grasp and fall on top of her.

Another deputy testified that he arrived on the scene and observed Heuschel on top of appellant while she was kicking and trying to get up. With the second deputy's assistance, Heuschel was able to handcuff appellant. Law enforcement found the stolen items in a trash can near where appellant was arrested. Heuschel sustained minor abrasions, and was not aware of any injuries to appellant.

*Body Camera Footage*

Heuschel's body camera was not recording when he first approached appellant. The camera was activated during the encounter, when appellant was on the ground. The camera recorded for just over two minutes and then turned off, possibly because appellant hit it with her elbow.[2] Heuschel testified that, after the camera turned off, the encounter continued for two or three minutes before the second deputy arrived.

At the beginning of the video, appellant asks Heuschel, "What is wrong with you?" He tells her she's under arrest for shoplifting and doesn't "have to make it difficult." Appellant asks a bystander to "record this." A bystander tells her, "Don't resist" and she responds, "I'm not resisting . . . ." Heuschel tells appellant multiple times to "roll over on your face." She responds, "I'm not going to roll over on my face," and later says she "can't," claiming to be pregnant (a claim Heuschel testified she later admitted was not true). Appellant tells Heuschel she is trying "to put my arms behind my back but you can't throw me on the ground." Heuschel says, "I'm not throwing you on the ground, I'm trying to put you on the ground but you're resisting." Appellant twice says "I'll put my hands behind my back" and repeats, "you ain't gotta throw me on the ground." She tells Heuschel she will cooperate

---

[2] The video recording was played for the jury and a transcript was provided.

and is trying to cooperate; when he asks her to roll over she responds, "how I'm going to roll over if you won't let me get up?" The camera stops recording shortly thereafter.

Body camera video subsequently recorded Heuschel interviewing appellant as he drove her to the police station.[3] Appellant initially denies shoplifting but soon says, "whatever I stole I'll pay for it." After Heuschel tells her she should have said that at the beginning instead of refusing to go with Heuschel back to the store, the following exchange takes place:

"[Appellant]: I didn't say I wasn't goin' with you. I said I would sit down and talk to you. You told me to sit on the curb and I was trying to. And then you just grabbed me like I was gonna run or somethin'. What am I gonna - where am I gonna run to? It's like, I don't understand.

"[Heuschel]: What about you makin' a fist with your cigarette when I asked you to put the cigarette out?

"[Appellant]: I was tryin' to put the cigarette down. I didn't wanna put it - burn myself and I didn't wanna throw it and litter.

"[Heuschel]: You put your hand out like this with the cigarette in your hand.

"[Appellant]: I was - I had to - yeah I was tryin' to put the cigarette out.

"[Heuschel]: You were gonna punch me.

"[Appellant]: 'Cause it was lit. No the cigarette was lit I was tryin' to put it out on the floor."

After this exchange, appellant admits shoplifting, again offers to pay for the stolen items, and later tells Heuschel where she left the items.

They have a second exchange about fighting:

_____

[3] The video recording was played for the jury and a transcript was provided.

"[Heuschel]: Why did you fight me?

"[Appellant]: I didn't try to fight you you just threw me down on the ground when you told me to sit down and I was tryin' to sit down.

"[Heuschel]: I put my hand on your wrist you went to pull back and resist. I went to put my hand on your shoulder, you made a fist with your other hand and your cigarette, like, I don't get that. Like, you could've just been, like, totally cool and I could've gave you a ticket and [c]ited you out.

"[Appellant]: You're right (unintelligible).

"[Heuschel]: So why'd you - why'd you fight though?

"[Appellant]: I don't know."

Later appellant maintains, "I was tryin' to cooperate by just sitting." Heuschel presses her: "what I'm askin' is why did you fight? Like, why didn't you just - when I put my hands on you and I'm like, 'You're under arrest.' And I tried to put the handcuffs on, like, why didn't you just go with it?" Appellant responds, "I don't know. I never resist arrest so I really don't even know why. Because I - I didn't wanna go to jail because it was ridiculous. I just felt like if I go to jail I'm gonna lose everything I got and I just wanted to sit down and talk to you but at the same time I couldn't because we just started rumblin' around."

*Verdict and Sentence*

The jury found appellant guilty of both charged counts: resisting an executive officer (§ 69) and misdemeanor petty theft (§ 484, subd. (a)). The trial court found true a prior prison term allegation, suspended imposition of sentence, and placed appellant on three years formal probation. This appeal followed.[4]

---

[4] Appellant does not challenge the petty theft conviction on appeal.

5

DISCUSSION

I.    *Lesser Included Offense*

Appellant argues the trial court prejudicially erred in failing to sua sponte instruct the jury on simple assault and battery as lesser included offenses of resisting an executive officer.[5]  We agree with respect to assault.

A.    *Error*

" ' "California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed." ' "  (*People v. Brown* (2016) 245 Cal.App.4th 140, 152 (*Brown*).)

1.    *Necessarily Included*

" 'Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' "  (*Brown, supra,* 245 Cal.App.4th at p. 152.) Appellant contends assault and battery are necessarily included offenses under the accusatory pleading test.

The elements of assault are: "an act that by its nature would directly and probably result in the application of force to a person;" the act was done "willfully;" awareness "of facts that would lead a reasonable person to realize that [the] act by its nature would directly and probably result in the application of force to someone;" and "the present ability to apply force to a

---

[5] The jury was instructed on the lesser included offense of misdemeanor resisting a peace officer (§ 148, subd. (a)).

6

person." (CALCRIM No. 915; § 240.) Battery is the willful touching of a person "in a harmful or offensive manner." (CALCRIM No. 960; § 242.)

"[S]ection 69 can be violated in two separate ways . . . . A person can commit this felony either by (1) attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law, or (2) by knowingly resisting through the actual use of force or violence against an officer in the performance of his or her duty. [Citation.] A person can violate section 69 in the first way without necessarily attempting to apply physical force." (*Brown, supra,* 245 Cal.App.4th at p. 153.) In *Brown,* the Court of Appeal held: "Because the accusatory pleading used the conjunctive to charge [the defendant] with both ways of violating section 69, and it is not possible to violate the statute in the second way without committing an assault, we conclude that assault was necessarily a lesser included offense of section 69 under the accusatory pleading test." (*Brown*, at p. 153.) *Brown* did not consider whether battery was a lesser included offense.

As in *Brown,* the information charged appellant with both ways of violating section 69. The People argue assault is not a lesser included offense under the accusatory pleading test because a defendant can forcibly resist an executive officer "without attempting 'to harm or otherwise touch the officer.' " The case relied on by the People held that "forceful resistance of an officer by itself gives rise to a violation of section 69, without proof force was directed toward or used on any officer." (*People v. Bernal* (2013) 222 Cal.App.4th 512, 520.) But assault also does not require proof that the attempted force was directed toward the victim. "An 'assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its

7

nature will probably and directly result in the application of physical force against another.' " (*Brown, supra,* 245 Cal.App.4th at pp. 151–152; accord, *People v. White* (2015) 241 Cal.App.4th 881, 885 [" '[T]he crime of assault has always focused on the nature of the act and not on the perpetrator's specific intent.' "].) We conclude assault is a lesser included offense.

The People argue battery is not a lesser included offense because resisting arrest can be committed without touching, for example, "by kicking or punching in the air." In response, appellant argues that "a defendant who completes an assault . . . cannot violate section 69 without also committing a battery, which is simply a successful assault." Appellant's argument fails to address whether the accusatory pleading alleges facts that require a touching. (See *People v. Cheaves* (2003) 113 Cal.App.4th 445, 454 ["The evidence adduced at trial is not to be considered in determining whether one offense necessarily is included within another."].) The information alleged, as relevant here, that appellant "did knowingly resist by the use of force and violence [Heuschel] in the performance of his duty." Appellant does not argue or cite authority that this allegation necessarily requires a touching and has therefore forfeited any such claim. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."]; cf. *People v. Lewis* (2004) 120 Cal.App.4th 882, 888 [because "torture does not require a direct use of touching, physical force, or violence, . . . a defendant may commit torture without necessarily committing a battery"].)

Accordingly, appellant has established that assault, but not battery, was a lesser included offense under the accusatory pleading test.

## 2. *Substantial Evidence*

In *Brown,* police officers testified they yelled at the defendant to stop and, when he did not, they threw him off his bicycle to the ground where he began swinging at them. (*Brown, supra,* 245 Cal.App.4th at p. 146.) The defendant testified he fell off his bicycle after hitting a curb and, when he was on the ground, an officer repeatedly punched him with no provocation. (*Id.* at pp. 146–147.) The Court of Appeal found substantial evidence to support an assault instruction: "[T]he jury could have, on the one hand, believed [the defendant's] testimony that he did not resist the officers before he fell or was pushed off his bike and was then tackled and slugged by [an officer] while face-down on the ground, unresisting and ready to surrender—a scenario that would have made the arrest unlawful due to excessive force. The jury could still, on the other hand, have accepted the officers' testimony that [the defendant] wheeled and repeatedly swung at them, striking both officers. If the jury concluded that [the defendant's] reaction was unreasonable, that would have supported an assault conviction. '[W]hen excessive force is used by a defendant in response to excessive force by a police officer . . . defendant [may] be convicted, and then the crime may only be a violation of section 245, subdivision (a) or of a lesser necessarily included offense within that section,' such as section 240." (*Brown*, at pp. 154-155.)

Similarly here, the jury could have believed appellant's statements, recorded on the body camera videos, that at the beginning of their encounter she was trying to comply with Heuschel's directions to sit down and put out her cigarette when he threw her to the ground. The jury could also have believed the testimony of Heuschel and the second deputy that, when appellant was on the ground, she was thrashing and kicking and threw her elbow at Heuschel, striking him.

9

The People do not argue the evidence is insufficient to establish excessive force by Heuschel, although they complain the sole evidence of excessive force is appellant's "self-serving accusations." The credibility of appellant's statements is immaterial. " 'In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury.' " (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

The People contend instead that appellant's force was not excessive. Heuschel testified that, when appellant was on the ground, she threw her elbow at him and he was unable to handcuff her due to her struggling, and the second officer testified she was "thrashing and kicking." We cannot say that her force was reasonable as a matter of law. Accordingly, there was substantial evidence to support the assault instruction.

B.    *Prejudice*

" ' "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone," ' " and therefore " ' "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." ' " (*Brown, supra,* 245 Cal.App.4th at p. 155.)

Although it is close, we find the error prejudicial. In the body camera recording made after appellant's arrest, she admitted to the theft but repeatedly maintained that she was initially trying to comply with Heuschel when he threw her to the ground. The People argue the statements were "self-serving" and point to her false statements that she did not commit theft and was pregnant. However, it is reasonably probable that a jury would conclude that, because appellant admitted she lied about the theft and the pregnancy shortly after the encounter, her continued assertions that she was

10

initially trying to comply with Heuschel were credible.  The People also argue there is evidence that appellant fought with Heuschel, for example, the body camera footage of their struggling, witness testimony that appellant was struggling with Heuschel while they were on the ground, and appellant's failure to contradict Heuschel's statement that she had been "fightin' pretty good."  But all of this evidence either is or could be relating to events *after* the initial encounter, in other words, it could be evidence of appellant's unreasonable force in response to Heuschel's excessive force.  Finally, we note that the jury asked two questions about the section 69 charge (about the difference between section 69 and section 148, and about the meaning of "force"), indicating they did not find the evidence overwhelming and/or did not necessarily credit all of the deputies' testimony.

Accordingly, we will reverse the section 69 conviction.[6]

II.    *Section 667.5 True Finding*

The trial court imposed a one-year prior prison term enhancement pursuant to section 667.5, subdivision (b), for a 2017 identity theft conviction.

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  (§ 667.5, subd. (b).) . . . Effective as of January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)  "Senate Bill No. 136's

---

[6] We need not and do not decide appellant's other challenges to the section 69 conviction.

(2019–2020 Reg. Sess.) amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020, effective date." (*Jennings,* at p. 682.)

As the People properly concede, appellant's prior conviction is not a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).  Accordingly, we will strike the enhancement.

DISPOSITION

The section 69 conviction is reversed and remanded.  The section 667.5, subdivision (b) enhancement is stricken.  The judgment is otherwise affirmed.

_____

SIMONS, Acting P.J.


We concur.


_____

NEEDHAM, J.


_____

REARDON, J.[*]


(A157672)

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


13