[No. G028224. Fourth Dist., Div. Three. May 30, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
GUY LESLIE BAKER, Defendant and Appellant.

## COUNSEL

Joyce M. Keller and Amanda F. Doerrer, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FYBEL, J.**—Guy Leslie Baker challenges his conviction by a jury for the crime of torture under Penal Code section 206 (all further statutory references are to the Penal Code). He contends the evidence was insufficient to prove he had the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or any other sadistic purpose as required by section 206.

Evidence showed that Baker doused his wife, Jasmine, with gasoline, lit her on fire, and watched her burn. Jasmine suffered second and third degree burns over her extremities, neck, and torso that required skin grafts to repair and left severe scarring and disfigurement. Baker contends the evidence showed Jasmine was burned accidentally as a result of his botched suicide attempt. We conclude there is substantial evidence that Baker inflicted great bodily injury on Jasmine with the requisite intent and purpose. We affirm.

## FACTS

*Evidence Supporting Conviction*

Baker and Jasmine were married in December of 1998. Jasmine spoke Spanish but little English. Baker learned enough Spanish to communicate with her in that language.

Baker, a controlling and possessive husband, was terrified Jasmine would leave him. He often followed Jasmine when she left the house, bought her a cell phone to keep track of her whereabouts, and on several occasions took or hid Jasmine's identification papers. Baker needed constant reassurance Jasmine would not leave him and threatened to commit suicide if she tried to do so. When making these threats, Baker would say, "My God is going to tell me when you're with me."

Baker and Jasmine were separated from April through September of 1999. During this period, Baker kept Jasmine's identification papers and repeated the threats to kill himself.

About 5:30 p.m. on February 17, 2000, Baker returned from work to the apartment in La Habra where he was living with Jasmine and her six-year-old son Alan. Jasmine's mother, Concepcion, was visiting at the time. When

Baker arrived home, Jasmine asked for her identification papers, which she believed he had taken again. Baker became upset and yelled (in Spanish), "Problems. Lots of problems for you." He retrieved the papers and, showing them to Jasmine, again remarked in Spanish, "Problems for you." They argued until Baker thought he overheard Concepcion tell Jasmine to get a divorce and Jasmine respond, "yes." Baker then stormed out of the apartment, taking the papers with him and telling Concepcion, "Sorry mom" before he left.

Baker returned about 10 minutes later with a rope and a gallon of gasoline in a plastic juice container. Jasmine thought the gasoline was lemon punch and asked why he had bought it. Baker replied, "You'll see, you'll soon see."

Baker put the gasoline-filled container in the refrigerator, walked to the bedroom, and threw the rope into the closet. Jasmine, concerned that Baker might try to commit suicide, followed him into the bedroom and asked what he intended to do. "I'm mad, very mad," he replied. Jasmine retrieved the rope, called for her mother, and asked Baker, "what are you going to do?" When Concepcion entered the bedroom, Jasmine cried, "Look, look what Guy's going to do."

Jasmine and Concepcion followed Baker as he walked from the bedroom to the kitchen. Baker opened the refrigerator door. With his left hand he grabbed Jasmine by the waist. With his right hand he quickly opened the juice container, removed it from the refrigerator, held the container aloft, and, saying "You'll soon see," poured the gasoline over Jasmine's head. The gasoline flowed down her body. After pouring out the contents, Baker discarded the container and used both arms to drag Jasmine toward the gas stove while Jasmine screamed, "Please don't do that." She struggled to save herself but slipped on the linoleum floor, now slick with gasoline. Concepcion was crying, "No, Guy" and pulling at Baker in an attempt to prevent him from reaching the stove. Alan, sobbing, emerged from his bedroom and walked toward the kitchen. Baker reached the stove, but was unable to light it. He grabbed a match, but it too would not light. Baker then found a lighter. It worked, and he used it to ignite Jasmine's hair.

Jasmine felt the flames in her hair and shouted to her mother, "Save yourself and save my son. Please go out and ask for help." Baker just stood and watched Jasmine burn. Jasmine ran to the sink and doused the flames by emptying a bowl of dishwater onto her head.

Concepcion was on fire too, but managed to get Alan out of the apartment. Jasmine looked through the kitchen window, saw Concepcion in flames, and

rushed out to save her. As Jasmine pulled off Concepcion's burning sweater, Concepcion's skin peeled off from her mouth to mid torso.

The apartment now was engulfed in flames. Meanwhile, Baker slipped out.

Baker appeared at the front desk of the Downey Police Department about 6:20 p.m. on February 17. His hands were badly burned, his hair and eyebrows were singed, and he smelled of gasoline. Baker, announcing he wanted to turn himself in, told the duty officer that he had thrown gasoline on his wife and used a match to light her on fire because she wanted to divorce him.

Baker was taken to the hospital, where he told the admissions nurse he burned his hands while setting his wife on fire after pouring gasoline on her. On the way to the hospital, Baker told the paramedics he had accidentally burned his shirt and asked the attending police officer, "You're going to charge me with attempted murder; aren't you?" While being treated at the hospital, Baker said he would plead insanity and spontaneously commented that he must have been crazy or "loco" for setting his wife on fire.

After Baker left the apartment, Jasmine and Concepcion were taken to the hospital. The parties stipulated the fire caused Jasmine to suffer second and third degree burns over her neck, torso, and left arm. She suffered skin and lung infections and needed skin grafts to repair the burned areas. The burns caused permanent cosmetic disfigurement with noticeable scars and a loss of range of motion in Jasmine's hand and arm. She still suffers anxiety attacks consistent with posttraumatic stress. Concepcion suffered burns to her chest, torso, and left arm, and has a permanent cosmetic disfigurement, scars, and loss of range of motion in her left arm and hand. Both Jasmine and Concepcion were in the hospital for a month.

*Baker's Evidence*

Baker told a different story. He testified that he initially intended to commit suicide with the rope and gasoline by setting himself on fire and hanging himself after the others had gone to bed. But when he walked into the bedroom with the rope, Jasmine called him crazy, and that upset him so much he "snapped" and decided to kill himself immediately by setting himself on fire and jumping off the balcony. After he changed his plan, Baker walked to the kitchen, removed the container of gasoline from the refrigerator, and stood ready to pour the gasoline over himself. (He could not explain why he was in the kitchen if he intended to jump off the balcony

after setting himself on fire). Jasmine intercepted him. Baker tried to push Jasmine away, but she tipped the container, causing the gasoline to spill on her face and on Baker's arms, shirt, and trousers. Baker tried to light a match to set himself on fire, but the match was soaked in gasoline and it failed to light. Baker turned on the stove to light the match. As Baker reached over to light the match with the flame from the stove, Jasmine and Concepcion pulled him back, and the stove set Baker's hand on fire. Baker slipped on the gas-slick floor, and as he fell, his burning hand brushed against Jasmine and set her on fire. Although Baker could see that Jasmine was in flames, he left the apartment without helping her.

Detective Braasch of the La Habra Police Department interviewed Baker while he was being treated at the hospital on the evening of February 17. Detective Braasch testified Baker said he tried to pour gasoline on himself and light himself on fire, but during an altercation some gasoline spilled on Jasmine and both of them caught fire.

Two psychologists testified on Baker's behalf. Dr. Kara Cross, a licensed clinical psychologist, performed a psychological evaluation of Baker and concluded he is undergoing early onset of dementia. She also concluded that Baker has a depressive disorder, suicidality, and suicidal ideation. Dr. Antoon Leenaars, a psychologist specializing in suicidology, reviewed Baker's psychiatric history, police reports, jail records, and correspondence, and he interviewed Baker and various family members. Dr. Leenaars concluded that Baker has suffered depression and is a high suicide risk when facing rejection. Baker's first wife testified that Baker previously made a suicide attempt when she accused him of having an affair. She also testified Baker was controlling but never was violent and threatened only to harm himself.

## DISCUSSION

*Standard of Review*

 Because Baker challenges the sufficiency of the evidence to support his torture conviction, we examine "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].) We view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier of fact reasonably could deduce from the evidence. (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228,

721 P.2d 110].) The jury, not the appellate court, must be convinced of guilt beyond a reasonable doubt; for us, "[t]he test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388].)

*The Crime of Torture*

■ Section 206 provides: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain." As the statute states, torture has two elements: (1) a person inflicted great bodily injury upon the person of another, and (2) the person inflicting the injury did so with specific intent to cause cruel and extreme pain and suffering for the . purpose of revenge, extortion, persuasion, or for any sadistic purpose. (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1571-1572 [18 Cal.Rptr.2d 395].)

*Substantial Evidence Supports the Conviction*

■ Baker directs his challenge to the second element. He contends he did not have the requisite intent to cause Jasmine cruel or extreme pain and that she was burned accidentally in his failed suicide attempt. We disagree.

■ "Intent is a state of mind. A defendant's state of mind must, in the absence of the defendant's own statements, be established by the circumstances surrounding the commission of the offense." (*People v. Mincey, supra,* 2 Cal.4th at p. 433; see *People v. Hale* (1999) 75 Cal.App.4th 94, 106 [88 Cal.Rptr.2d 904] ["Intent to cause cruel or extreme pain can be established by the circumstances of the offense"].) ■ Here, both the circumstances and Baker's own statements establish the requisite intent to cause Jasmine cruel or extreme pain and suffering. Jasmine testified that when she asked Baker about her missing papers when he returned home on February 17, he became angry and told her, "Problems for you." She testified Baker left the apartment and returned about 10 minutes later with a rope and a container of gasoline (which Jasmine thought was lemon punch). When Jasmine asked Baker why he had bought lemon punch he said, "You'll see, you'll soon see." When she asked him what he intended to do with the rope, he replied, "I'm mad, very mad."

Jasmine graphically described and physically demonstrated how Baker forcibly held her by the waist with his left hand, poured gasoline over her

head with his right hand, discarded the plastic container, used both hands to drag her toward the stove, fumbled to turn on the stove, and ultimately used a lighter to set her hair on fire. Jasmine described the sensation of burning hair and her frantic efforts to quench the flames with dishwater—while Baker did nothing but watch her burn. Concepcion gave virtually the same description of events.

The duty officer testified that when Baker appeared at the Downey Police Department on the evening of February 17, he wanted to "turn himself in." Baker explained he had thrown gasoline on his wife and set her on fire because she wanted to divorce him. The officer who accompanied Baker to the hospital heard Baker tell the admissions nurse he burned his hands when he lit his wife on fire, and heard his spontaneous comments that he "must have been crazy" and would plead insanity.

In addition, Jasmine's scarring and disfigurement constitute strong circumstantial evidence of intent to inflict severe pain and suffering. (See *People v. Mincey, supra,* 2 Cal.4th at p. 433 ["The condition of the victim's body may establish circumstantial evidence of the requisite intent"].)

Evidence of Baker's wrongful purpose is present too. Jasmine testified (as did Baker's first wife) that Baker was a controlling husband who was terrified his wife would leave him. Baker testified he angrily left the apartment on February 17 after he thought he heard Concepcion say, "divorce him" and Jasmine reply, "yes." The duty officer and the officer who accompanied Baker to the hospital heard him say he set his wife on fire out of anger because she was going to divorce him. A logical conclusion is that Baker returned to the apartment and set Jasmine on fire either as *revenge* for considering divorce or to *persuade* her not to pursue divorce.

The record viewed as a whole thus contains sound, credible evidence that amply supports the conclusion Baker intended to cause Jasmine cruel or extreme pain with the requisite intent and purpose.

*Baker's Contentions*

Baker contends the cases in which torture convictions have been affirmed involve evidence demonstrating "uniquely vicious behavior" or "evilness" not present here. ■■■ But "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas, supra,* 2 Cal.4th at p. 516.) The evidence here stands on its own and supports the conclusion Baker engaged in "extremely violent and callous criminal conduct" (*People*

*v. Barrera, supra,* 14 Cal.App.4th at p. 1573) within the proscription of section 206.

The cases Baker cites demonstrate his conduct falls well within the range of reprehensibility found to violate section 206. In *People v. Hale, supra,* 75 Cal.App.4th 94, the defendant attacked his victim while she slept and struck her face twice with a ball peen hammer. The victim suffered cracked teeth, a split lip, and a cut below her eye. (*Id.* at p. 106.) The defendant admitted he intended to assault (and possibly kill) the victim, but contended the evidence was insufficient to establish he intended to torture her. The court, rejecting this contention, affirmed the torture conviction because "[i]t is reasonable for a jury to infer that by attacking [the victim] with a hammer at night when she was asleep in bed with her daughter beside her, Hale intended to cause [the victim] to suffer cruel physical pain as well as extreme anguish and terror." (*Ibid.*)

In *People v. Jung* (1999) 71 Cal.App.4th 1036 [84 Cal.Rptr.2d 5], rival gang members chased and beat the victim, forced him to disrobe, placed him bound and naked in the trunk of a car, burned him with cigarettes, forced him to drink urine, tattooed him, poured rubbing alcohol over the raw tattoos, rubbed Ben-Gay on his genitals, shaved his head, dressed him in girl's clothing, forced him to dance, bit him, and threatened to kill family members if he talked to the police. The defendants contended the evidence established only an intent to humiliate the victim, not to inflict extreme pain. The court disagreed and held the evidence supported an intent to cause severe pain and suffering. (*Id.* at p. 1041.)

In *People v. Healy* (1993) 14 Cal.App.4th 1137 [18 Cal.Rptr.2d 274], the defendant, over a two-week period, repeatedly struck his stepchild in the jaw, back, arms, and neck, split her lips, broke her ribs, and flung her in the air so she landed with the back of her head on the floor. Affirming the torture conviction, the court held the evidence sufficient to establish the defendant acted for "persuasive or sadistic purposes." (*Id.* at pp. 1140-1141.)

Baker's conduct reflects a no less dastardly intent to cause pain and suffering than does striking the victim twice with a hammer. ▉ Although the regimen of torture inflicted on the victims in *Jung* and *Healy* lasted longer than did Jasmine's ordeal, "neither the intent to cause nor the actual causing of prolonged pain is a requirement of torture as defined in section 206" (*People v. Hale, supra,* 75 Cal.App.4th at p. 108), and Baker inflicted physical injuries at least as painful and permanent as those in *Jung*.

▉ As Baker points out, the record contains evidence tending to support his assertion he was suicidal and accidentally burned Jasmine while

trying to commit suicide. But this evidence does not permit, much less compel, reversal for at least three reasons. First, the jury is the sole judge of credibility and therefore was free to reject any or all of this testimony (*People v. Barnes, supra,* 42 Cal.3d at p. 303) and to disregard any expert's opinion (Pen. Code, § 1127b). Second, even if the evidence presented was susceptible to a reasonable interpretation supporting Baker's acquittal, we nonetheless must affirm because the evidence also was reasonably susceptible to an interpretation supporting the jury's verdict of guilt. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933 [251 Cal.Rptr. 467, 760 P.2d 996].)

Finally, from the testimony favoring Baker, the jury could draw reasonable inferences consistent with a judgment of guilt or decline to draw inferences supporting a judgment of acquittal. (*People v. Clark* (1953) 116 Cal.App.2d 219, 223 [253 P.2d 510].) For example, the jury reasonably could have concluded Baker intended to use the rope to strangle Jasmine or that after returning to the apartment with the gasoline and rope changed his mind and decided to torture her rather than commit suicide. Such a sudden change in plans would not preclude a torture conviction because section 206 does not require a premeditated intent to cause pain. (*People v. Vital* (1996) 45 Cal.App.4th 441, 444 [52 Cal.Rptr.2d 676].) The jury might have agreed with the two psychologists that Baker was suicidal, but could have declined to draw the inference he was committing suicide when Jasmine was set aflame.

## DISPOSITION

We conclude based upon reviewing the entire record the evidence is sufficient to support Baker's conviction for torture. The judgment of conviction is therefore affirmed.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.