Filed 10/13/20  P. v. Buford CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072474 |
| v. | (Super.Ct.No. FSB17004057) |
| TIMOTHY BUFORD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Harold T. Wilson, Judge.  Affirmed as modified.

Benjamin Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Timothy Buford was convicted of first degree burglary in violation of Penal Code section 459.[1]  In a bifurcated proceeding, the court found defendant had one prior serious felony conviction (§ 667, subd. (a)), one "strike" prior (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served five prior prison terms (§ 667.5, subd. (b)).  Defendant was sentenced to 22 years.

Defendant raises two contentions on appeal:  (1) there was insufficient evidence to sustain the burglary conviction; and (2) the prior prison term enhancements should be stricken because the amended version of section 667.5, subdivision (b), does not apply to his circumstances.  We agree that the prison priors should be stricken and otherwise affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Prosecution Evidence*

On October 23, 2017, defendant and a few other people were at M. B.'s (the victim) house in Big Bear.  At some point, the victim looked out the window and saw defendant walking down the street with a blue guitar that belonged to the victim's roommate.  The victim assumed defendant took the guitar as collateral for a debt his roommate owed defendant.

The next day, defendant went back to the victim's house a little before 5:00 p.m.  The victim was inside playing a guitar.  Defendant knocked on the door and barged in when the

---

[1]  All further statutory references are to the Penal Code.

2

victim answered. Defendant was angry with the roommate. Defendant went directly to the common area of the house where the roommate would have been and asked the victim where that "mother effer" was. The roommate was not home at the time. Defendant then picked up a red guitar worth $1,200, an amplifier head worth $390, and a sound effects pedal worth $130. All three of these items belonged to the victim. The victim told defendant the items were his, not the roommate's. Defendant responded, "I don't care. I'm taking it anyway." The victim tried to stop defendant by standing in his way. Defendant told the victim to get out of his way and said he was "strapped." He told the victim, "Don't make me use this." Defendant lifted his shirt and gestured to the handle of what the victim believed to be a gun tucked into his waistband. The victim got out of defendant's way. Defendant called out to a friend who was across the street in his truck. (The friend was later identified in the defense case as R.G.) R.G. came over and helped defendant carry the equipment out to the truck, then they left. The victim called law enforcement about 10 minutes later. He told the responding deputy what happened and gave a description of R.G.'s truck. The deputy described the victim as being shaken up and in distress.

After leaving the victim's house, defendant and R.G. drove to J.L.'s house in nearby Sugar Loaf. Defendant had been to J.L.'s house earlier in the day asking to borrow $45 or $50. He returned later with the musical equipment. Defendant left the equipment at J.L.'s house as collateral for the money J.L. loaned him. Defendant told J.L. he got the equipment from a friend who owed him "a grip" of money, which J.L. understood to mean $100.

3

Defendant said he would come back for the equipment the next day after the friend paid him back, and he would repay J.L. then.

Sheriff's deputies pulled R.G. over an hour or two after the victim reported the incident. Defendant was still in the truck. Defendant had a folding pocketknife on him, but not a gun. Deputies later recovered the musical equipment from J.L.'s house and returned it to the victim.

## B.     *Defendant's Motion for an Acquittal*

Following the close of the prosecution's case-in-chief, defendant moved for an acquittal on the burglary charge under section 1118.1. The trial court denied the motion. Defendant then testified in his own defense.

## C.     *Defense Evidence*

Defendant testified that he had known the victim for around five years. The two men had previously bought, sold, and traded musical equipment with each other. Defendant had also loaned the victim money several times. When he did this, the victim would leave an item with defendant as collateral until he could pay defendant back.

At some point before the incident, defendant loaned the victim around $45. Defendant went over to the victim's house on October 24, 2017, to see if the victim had the money to pay him back. The victim did not have the money, so he gave defendant the red guitar to hold as collateral until he could pay defendant back. The victim loaned defendant the amplifier to use at a gig and also loaned defendant the sound effects pedal to try out to see if he wanted to buy it. Defendant did not take any of these items against the victim's

4

wishes. Defendant had a folding knife clipped to his belt that day, but he never lifted his shirt to show the victim the knife, nor did he tell the victim he was "strapped." He did not have a gun with him.

Defendant was interviewed by a sheriff's deputy on October 25, 2017. Defendant told the deputy he had not stolen a guitar from a house in Big Bear the day before, nor had he been to Sugar Loaf that day. He also told the deputy that no one owed him any money.

## II.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends there was insufficient evidence to sustain his conviction for burglary because the evidence did not show he entered the victim's home with the intent to commit a theft.

Defendant's insufficiency argument is two-part. He argues the overall evidence was insufficient as a matter of law, and also that the trial court erred in denying his motion for an acquittal under section 1118.1, because the evidence in the prosecution's case-in-chief was insufficient to sustain the conviction. We review both contentions under the same standard of review, the difference being the extent of the evidence we assess. In cases where a defendant challenges the sufficiency of the evidence on appeal, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) "When reviewing a claim the

5

trial court erred by denying a motion for acquittal under section 1118.1, we apply the same standard as when evaluating the sufficiency of evidence to support a conviction, except that we consider only the evidence in the record at the time the motion was made." (*People v. Roldan* (2011) 197 Cal.App.4th 920, 924.)

To sustain a conviction for burglary, the evidence must establish that the defendant entered the premises with the intent to commit a felony or theft. (*People v. Holt* (1997) 15 Cal.4th 619, 669; § 459.) The focus of the analysis is the defendant's intent at the time he or she entered the building. "One may b[e] liable for burglary upon entry with the requisite intent . . . regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) The intent to commit a theft is rarely susceptible of direct proof and may be inferred from all the facts and circumstances disclosed by the evidence. This includes the defendant's conduct before, during, and after entry into the home. (*People v. Holt*, *supra*, 15 Cal.4th at pp. 669-670.) When the evidence justifies a reasonable inference of felonious intent upon entry, the verdict may not be disturbed on appeal. (*Id*. at p. 670.)

We start our analysis by addressing defendant's section 1118.1 claim because our conclusion on this issue is dispositive of defendant's broader claim that the evidence did not establish that he entered the home with the intent to commit a theft.

The evidence presented in the prosecution's case-in-chief showed that defendant went to the victim's house to collect on a debt. Defendant barged in when the victim

answered the door and angrily demanded to see the roommate. When he found out the roommate was not there, he immediately began taking musical equipment from the common area of the home. The victim tried to stop defendant by standing in his way and telling defendant the items belonged to him and not the roommate. Defendant responded by lifting his shirt, showing the handle of a weapon and telling the victim, "Don't make me use this." Defendant then called out to a friend who was waiting outside in a truck to help him carry the items.

Reviewing these facts in the light most favorable to the judgment, there was sufficient evidence from which the jury could have concluded that defendant had the intent to commit a theft when he entered the home. Defendant came to the home armed and angry, and he showed no regard for the fact that the victim did not want him to take the equipment. He took the equipment under threat of force within minutes of entering the home, and he had a friend waiting in a truck outside to help him load the equipment and take it away. He also took approximately $1,720 in musical equipment to satisfy a debt that he told J.L. was for around $100. When a defendant commits "theft or a felony in a building shortly after entering it, no great inferential leap is necessary to conclude that the intent to commit the supporting offense existed at the time of entry." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1246.)

Defendant argues the evidence showed that whatever intent he had in entering the home was directed at the roommate, not the victim; and that he did not form the intent to steal the victim's property until *after* he entered the home and found out the roommate was

7

not there.  Defendant cites no case law, and we are aware of none, that requires the defendant's intent to commit theft upon entry be directed toward a specific resident inside the home.  We do not believe the intent requirement is that narrow.  (Cf. *In re Jesus O.* (2007) 40 Cal.4th 859, 868 [theft requires an intent to steal, not an intent to steal specific property].)  Moreover, defendant's argument does not take into consideration the fact that a burglary charge is based on what the defendant intended at the time of entering the building, not on what ultimately happened inside.  (*People v. Montoya*, *supra*, 7 Cal.4th at pp. 1041-1042.)  In other words, as long as the evidence was sufficient to show that defendant entered the victim's home with the intent to commit a theft—which it was—it does not matter whether the property he ultimately took belonged to the victim or the roommate.  Accordingly, the court did not err in denying defendant's section 1118.1 motion.

We also reject defendant's additional claim that the overall evidence was insufficient to sustain the burglary conviction.  Defendant testified in his own defense and provided the jury with a differing version of events than was presented in the prosecution's case-in-chief.  As the triers of fact, the jury assessed the credibility of all witnesses and were free to accept or reject the defendant's testimony.  (*People v. Baker* (2002) 98 Cal.App.4th 1217, 1226.)  They found the prosecution's evidence more credible and, as addressed *ante*, there was sufficient evidence in the record to support their verdict.

In sum, we conclude the evidence presented in the prosecution's case-in-chief was reasonably susceptible to an interpretation supporting the jury's verdict of guilt, and the jury

8

was free to accept or reject any further evidence presented by the defense.  We therefore affirm defendant's conviction for burglary.

## IMPOSITION OF THE PRISON PRIORS

Defendant next contends that under Senate Bill No. 136 (2019-2020 Reg. Sess.), his prior prison term enhancements must be stricken.  The People concede the point.  We agree.

Senate Bill No. 136 went into effect on January 1, 2020.  It amended section 667.5, subdivision (b), to eliminate all prior prison term enhancements, unless the prior prison term was for a sexually violent offense.  (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.) Senate Bill No. 136 applies to all defendants whose convictions are not yet final.  (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738-739; see generally *In re Estrada* (1965) 63 Cal.2d 740, 744-748.)  Defendant's conviction is not final and none of his prior prison terms were for sexually violent offenses.  Accordingly, we strike the prison prior enhancements.

Generally, when an error affects part of a sentence, we must remand for a full resentencing on all counts and allegations.  (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) But where, as here, the trial court has already imposed the maximum possible sentence, a remand for resentencing is unnecessary.  (*Id*. at p. 896, fn. 15.)  We may simply strike the enhancements and affirm the judgment as modified.  (*People v. Lopez*, *supra*, 42 Cal.App.5th at p. 342.)  Hence, we will strike the prior prison term enhancements and modify the sentence accordingly.

IV.

DISPOSITION

The sentence is modified to strike defendant's five one-year prior prison term enhancements imposed under former section 667.5, subdivision (b).  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
P. J.


We concur:


CODRINGTON
J.


RAPHAEL
J.

10