Filed 5/21/24  P. v. Aguilar CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B326425 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A464812) |
| v. | |
| HECTOR RICHARD AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lillian Vega Jacobs, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Hector Richard Aguilar (defendant) argues that the trial court erred in denying, following an evidentiary hearing, his petition for relief under Penal Code section 1172.6[1] for three of his attempted murder convictions. Because sufficient evidence supports the trial court's finding of intent to kill as to those three convictions, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[2]

#### A. *The underlying crime*

Just after 2:00 a.m. on a Saturday in January 1985, defendant drove up alongside a car with five occupants to enable his passenger—Arthur Vasquez (Vasquez)—to open fire on those occupants with a rifle.

Minutes earlier, Vasquez had encountered Alex Alvara in the parking lot of a Los Angeles County Sherriff's Department station in Norwalk. Vasquez and Alvara belonged to rival gangs. They "mad dogged" each other, flashed gang signs, and swore at

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We draw these facts from the record at trial, as neither party supplemented that record at the evidentiary hearing on defendant's section 1172.6 petition.

2

each other.  Vasquez left the area when Alvara went into the station.

But Vasquez was not done.

Instead, he asked defendant—his friend—if he would drive him back to the station in a different car so that Vasquez could shoot Alvara.  Vasquez brought along his long rifle.  They parked across from the station and waited.  Alvara exited the station with four others—Joe Hernandez (Hernandez), Hernandez's teenage sister, Hernandez's mother, and Raymond Casas (Casas).  Alvara piled into the back seat with two others; Hernandez drove.

When Hernandez left the station's parking lot, Vasquez told defendant, "There goes the car now."  Defendant then started the car, drove over a center embankment, and sped to catch up with Hernandez's car.  Defendant pulled up alongside Hernandez's car.  Vasquez, in the front passenger's seat, then pulled out his rifle and proceeded to fire at least five shots into Hernandez's car.  One bullet struck Hernandez.  Another bullet struck Hernandez's teenage sister, who had been shouting at Vasquez.

Hernandez died from the gunshot wound.

In a post-arrest interview, defendant claimed that Vasquez had recruited him to shoot the tires of the car to force Alvara out and shoot him.

### B. *Charges, conviction, and appeal*

The People charged defendant with the first degree murder of Hernandez (§ 187, subd. (a)), and the attempted murder of the four other passengers (§§ 187, subd. (a), 664).  A jury found defendant guilty of all counts, and also found true the allegation that a fellow gang member was armed with a firearm (§ 12202, subd. (a)).  As modified on appeal, the trial court sentenced

3

defendant to 25 years to life on the murder count and a consecutive 12 years and four months on the attempted murder counts. Defendant appealed his convictions, and his counsel filed a no-merit brief under *People v. Wende* (1979) 25 Cal.3d 436. We affirmed his convictions in a nonpublished opinion. (*People v. Vasquez* (June 29, 1987, B017711) [nonpub. opn.].)

## II. Procedural Background

On February 22, 2019, defendant filed a petition seeking relief under section 1172.6. After we reversed the trial court's initial ruling that defendant had not stated a prima facie case for relief (*People v. Aguilar* (Jan. 28, 2021, B305389) [nonpub. opn.]), the trial court set the matter for an evidentiary hearing. At that hearing, the parties introduced no further evidence, choosing to rely on the trial record. The court denied relief, independently finding beyond a reasonable doubt that defendant acted with the "intent to kill" everyone in the car, "not just . . . Alvara," such that defendant was guilty of all the charged crimes.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his section 1172.6 petition for relief as to only three of the convictions—namely, the attempted murder convictions for the three passengers *other than Alvara*.[3]

In 2018, our Legislature amended the definition of "murder" in our state to preclude a jury from "imput[ing]" the "[m]alice" element of that crime "based solely on [a defendant's]

---

[3] Defendant does not attack the denial of relief for his convictions for the murder of Hernandez and the attempted murder of Alvara, ostensibly conceding the sufficiency of the evidence of his intent to kill as to Hernandez and Alvara.

participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e); e.g., *People v. Johns* (2020) 50 Cal.App.5th 46, 58-59.)

Section 1172.6 is the procedural vehicle by which persons convicted in now-final judgments can seek to vacate convictions that do not satisfy the current definition of "murder." Where, as here, a defendant files a facially sufficient petition and the record does not otherwise foreclose relief as a matter of law, the trial court must issue an order to show cause and convene an evidentiary hearing. (§ 1172.6, subd. (c).) At the hearing, the People have the burden of proving to the trial court, acting as an independent factfinder, that a defendant is guilty of murder on a still-valid theory. (§ 1172.6, subd. (d)(3).)

As pertinent here, the trial court found beyond a reasonable doubt that defendant was guilty of the attempted murder of the three other passengers under the still-valid theory that he directly aided and abetted Vasquez's murder with the intent to kill. Our task is to determine whether any rational trier of fact could have made the same determination beyond a reasonable doubt. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) We apply the substantial evidence standard of review. (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233-234.) In

5

so doing, we view the evidence in the light most favorable to the court's finding, drawing all reasonable inferences in support of that finding.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.)  Because "'we *must* begin with the presumption that the evidence . . . *was* sufficient,'" it is defendant, as the appellant, who "'bears the burden of convincing us otherwise.'"  (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.)  Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

## I.    Pertinent Legal Principles

To prove defendant guilty of attempted murder on a direct aiding and abetting theory, the People have to prove (1) defendant knew of Vasquez's unlawful purpose to commit attempted murder; (2) defendant, by his act or advice, aided, promoted, encouraged, or instigated Vasquez's commission of attempted murder; and (3) defendant acted with the intent to commit, encourage, or facilitate Vasquez's commission of attempted murder—that is, with the intent to kill.  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Prettyman* (1996) 14 Cal.4th 248, 259; *People v. Beeman* (1984) 35 Cal.3d 547, 561; *People v. Lee* (2003) 31 Cal.4th 613, 624.)

Where, as here, a defendant is charged with the attempted murder of several individuals, the People must prove either (1) that the defendant separately harbored an intent to kill each of those specific individuals, or (2) that the defendant harbored a concurrent intent to kill *every one of those individuals* because they were within a "kill zone."  (*People v. Canizales* (2019) 7 Cal.5th 591, 603 (*Canizales*) [alternative means of establishing

6

intent to kill].)  The second, "kill zone" theory is valid only if (1) "the circumstances of the defendant's attack on a primary target . . . are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm—that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death—around the primary target"; and (2) "the alleged attempted murder victim who was not the primary target was located within that zone of harm."  (*Id*. at p. 607.)  "Circumstances" bearing on whether the defendant intended "to create a zone of fatal harm and the scope of any such zone," include (1) "the type of weapon [the defendant] used," (2) "the number of shots fired (whe[n] a firearm is used)," (3) "the proximity of the alleged victims to the primary target," (4) "the distance between the defendant and the alleged victims," (5) whether the attack location was open or instead had a "limited means of escape," and (6) whether the defendant succeeded in hitting his primary target(s).  (*Id*. at pp. 607, 610-611.)

## II.    Analysis

### A.    *Independent intent to kill as to each victim*

Substantial evidence supports the trial court's finding that defendant separately harbored an intent to kill each of the specific individuals in the car.  It is well settled that "[t]he act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of an intent to kill." (*People v. Houston* (2012) 54 Cal.4th 1186, 1218; *People v. Smith* (2005) 37 Cal.4th 733, 742; *People v. Perez* (2010) 50 Cal.4th 222, 230; *People v. Medina* (2019) 33 Cal.App.5th 146, 153.)  Here, with defendant's help, Vasquez opened fire on all the occupants of Hernandez's car from close range, managing to shoot two out of

7

the five (namely, Hernandez and his sister).  Defendant resists this conclusion, asserting that he only admitted—in his post-arrest statement—to trying to kill Alvara, not the others.  We reject this assertion.  To begin, the trial court was not bound to accept defendant's self-serving statement regarding his intent.  (E.g., *People v. Baker* (2002) 98 Cal.App.4th 1217, 1225-1226.)  More to the point, no matter *what* defendant and Vasquez had planned initially, substantial evidence supports the trial court's finding that their plan had changed to an intent to kill everyone in the car because Vasquez said, "There goes the car now" (containing Alvara and four others), and defendant pulled up alongside Hernandez's car to enable Vasquez to open fire on everyone in the car.

### B. *"Kill zone" theory*

Substantial evidence also supports the alternative finding that defendant harbored a concurrent intent to kill *everyone* in the car because he and Vasquez created a "kill zone."  That is because substantial evidence supports a finding that the circumstances of the attack on Alvara "are such that the only reasonable inference is that" defendant and Vasquez "intended to kill everyone present to ensure" Alvara's death.  (*Canizales*, *supra*, 7 Cal.5th at p. 607.)  The pertinent circumstances confirm this conclusion.  Although Vasquez did not hit his intended target Alvara, he fired at least five bullets from a long rifle from the next lane over into the passenger compartment of a car containing five occupants; all of them were in very close proximity to Alvara; and the passenger compartment of the moving car was a closed space with no means of escape.  This conclusion is consistent with our Supreme Court's holding in *People v. Bland* (2002) 28 Cal.4th 313, that a finding of

concurrent intent was appropriate when the defendant and a fellow gang member approached a car and opened fire several times on the three passengers inside the car, killing or injuring all three passengers.  (*Id.* at pp. 318, 333.)  Although our Supreme Court in *Canizales* trimmed the broader construction that some appellate courts had given to *Bland*, the Supreme Court in *Canizales* reaffirmed *Bland* and its holding.  (*Canizales*, at p. 607.)

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST