Filed 1/30/25  P. v. Lorenzo CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAIME LORENZO,<br><br>        Defendant and Appellant. | B331495<br><br>(Los Angeles County<br>Super. Ct. No. VA102845) |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant Jaime Lorenzo appeals from the trial court's denial of his Penal Code section 1172.6[1] petition for resentencing following an evidentiary hearing. He contends the evidence was insufficient to support the court's finding that he aided and abetted his cohort's murders of the two victims. We affirm.

# II. FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2009, defendant was convicted, following a jury trial, of the second degree murder of Albert Rojas in violation of section 187, subdivision (a) (count 1) and the first degree murder of Federico Perez also in violation of section 187, subdivision (a) (count 2). The jury found true as to both defendant and codefendant David Carino the allegation that a principal was armed with a firearm in the commission of the murders within the meaning of section 12022, subdivision (a)(1). The jury found not true the allegation that defendant personally used a firearm within the meaning of section 12022.53, subdivision (b).

The evidence at trial demonstrated that on an evening in October 2007, the two murder victims and their friends walked

---

[1] All statutory references are to the Penal Code. Defendant filed his petition pursuant to former section 1170.95. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the statute by its current section number only.

[2] On September 19, 2024, we granted the Attorney General's request to take judicial notice of the record in the prior appeal from the judgment of conviction, case number B220035.

out of a bar.  As one of the friends, Erik Calderon, urinated between two parked cars in the parking lot, he heard "squeaking tires," car doors open, and someone say, "Did you call us [expletive]?"  Erik saw a truck parked in the middle of the parking lot with the doors open.  Four men, including defendant, Juan Garcia, and Carino, were standing in front of one of Erik's friends.  Carino and one other man were holding guns.

Victim Rojas walked up to the group, and Carino pointed his gun at him.  Garcia asked Rojas who he was.  Rojas raised his hands to his shoulders and raised his sweatshirt slightly.  Rojas walked backwards, away from the men.  Garcia swung at Rojas, grazing his chin.  Garcia then told the other men to hold Rojas.  Three men rushed toward Rojas, who continued to walk backwards and attempted to protect his face.  Garcia continued swinging.

When Rojas reached the sidewalk on Gage Avenue, victim Perez ran up and began swinging.  Garcia and two of the men turned their attention to Perez and tried to hit him.  One man stayed with Rojas.  Carino held a revolver and looked at Perez.  Rojas tried to get away and took a gun dropped by defendant.  Rojas moved toward Perez.  Carino attempted to fire at Perez, but the gun did not discharge.  He fired again and hit Perez.  He then fired three shots at Rojas, who was about five feet away in front of a Maxima sedan.  Rojas fell after being hit by the gunshot, and the Maxima, driven by Cardenas, hit him.  The front end of the car lifted, and Rojas became stuck between the front wheels of the car, and Cardenas made repeated attempts to move the car.  Cardenas eventually drove down the street, dragging Rojas under the car.  Both Rojas and Perez later died from their injuries.

The police interviewed defendant who told them that Carino shot Perez and Rojas. He explained that Carino gave him a semi-automatic handgun before they got out of the truck. Carino had a revolver. He knew that "guns [were] in the truck" and "[w]e were about to fight." As defendant fought with and kicked one of the men, the gun fell out of defendant's pocket. Defendant heard gunshots, picked up his fallen gun, got into the truck, and gave the gun back to Carino. They drove away.

According to Carino, defendant got out of the truck just before Carino, and Carino then heard the sound of "a gun being cocked back."[3] Carino had seen defendant carrying a semi-automatic weapon earlier in the evening before the fight.

The trial court sentenced defendant to 25 years to life in state prison for the first degree murder conviction, plus a concurrent 15 years to life term for the second degree murder conviction. This court affirmed the conviction and judgment as to defendant.

On January 28, 2015, defendant filed a petition for a writ of habeas corpus in the trial court, contending that he could not be convicted of first degree murder as an aider and abettor with a natural and probable consequences theory under *People v. Chiu* (2014) 59 Cal.4th 155. The Los Angeles County District Attorney (District Attorney) filed a concession brief, agreeing that the petition should be granted. The District Attorney elected not to retry defendant on first degree murder and instead agreed defendant's conviction on count 2 should be reduced from first

---

[3]     Carino testified at trial. The officer who recovered defendant's weapon confirmed that a semi-automatic handgun is readied for firing by pulling the metal slide back and chambering a round from the magazine.

4

degree to second degree murder, and that defendant should be resentenced accordingly.

On March 17, 2017, the same trial judge who presided over the trial and sentenced defendant, granted defendant's petition and reduced defendant's first degree murder conviction to second degree murder. In rejecting defendant's argument that he should be sentenced to involuntary manslaughter, the trial court stated, "Well, I have to say, counsel, that I heard the case, and I think this young man was up to—I think the evidence is ample and almost overwhelming that he was up to his ears in this whole transaction. [¶] He wasn't a bystander swept up by the events that—and there he is with his buddy and his gun falls out of his pocket and people die."

On July 19, 2017, the trial court conducted defendant's resentencing hearing. It again rejected defendant's request that he be sentenced to involuntary manslaughter and probation and, instead, sentenced him to "15 years to life. [¶] All other conditions as stated before apply."

On February 25, 2019, defendant filed a petition for resentencing pursuant to section 1172.6. The trial court denied defendant's petition, finding that the murder convictions were not based on a natural and probable consequences theory. Defendant appealed from the trial court's ruling, the Attorney General conceded error, and we reversed and remanded to the court to conduct further proceedings in accordance with section 1172.6.

On remand, the trial court found that defendant had made a prima facie case and proceeded to an evidentiary hearing at which neither party submitted additional evidence. On

5

September 29, 2021, the court reviewed the record of conviction and denied the petition.  Defendant appealed.

Because the record was ambiguous as to whether the trial court acted as an independent fact finder and applied the guilt beyond a reasonable doubt standard in finding defendant ineligible for resentencing relief, we reversed the court's order and remanded the matter for the court "either to clarify that it acted as an independent factfinder in denying defendant's section 1172.6 petition, or to redetermine the matter, based on the evidence received at the prior evidentiary hearing, under the correct standard."

On remand, the trial court conducted a hearing on June 6, 2023, and clarified that it had "acted as an independent factfinder and found that . . . defendant [was] guilty beyond a reasonable doubt under a still-valid theory of direct aiding and abetting of murder under implied malice."  Defendant timely filed a notice of appeal.

## III.  DISCUSSION

A.  *Section 1172.6*

"The Legislature enacted Senate Bill [No.] 1437 [(Senate Bill 1437)] 'to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1(b).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)  "Senate Bill 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. . . . [¶]  Second, Senate Bill 1437 imposed a new

6

requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder.  (§ 188, subd. (a)(3).)  'Malice shall not be imputed to a person based solely on his or her participation in a crime.'  (*Ibid.*)  One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine."  (*Id.* at pp. 448–449.)

"Senate Bill 1437 also enacted former section 1170.95 [renumbered as section 1172.6], which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction."  (*People v. Curiel*, *supra*, 15 Cal.5th at p. 449.)

At a section 1172.6, subdivision (d)(3) evidentiary hearing, "the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3)).  In addition to evidence admitted in the petitioner's prior trial, both '[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.'  (*Ibid.*)  'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'  (*Ibid.*)"  (*People v. Wilson* (2023) 14 Cal.5th 839, 869.)

We review a trial court's denial of a section 1172.6 petition for substantial evidence.  (*People v. Reyes* (2023) 14 Cal.5th 981, 987 (*Reyes*).)  "Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether

7

it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"' [Citation.]" (*Ibid*.)

B.    *Aiding and Abetting Implied Malice Murder*

As to both victims, the trial court found there was substantial evidence that defendant directly aided and abetted an implied malice murder. "In [*People v*.] *Gentile* [(2020) 10 Cal.5th 830 (*Gentile*)], we observed that 'notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' (*Gentile, supra*, 10 Cal.5th at p. 850.) Since our decision in *Gentile*, the Courts of Appeal have held that a defendant may directly aid and abet an implied malice murder. [Citations.]
"The Court of Appeal in [*People v*.] *Powell* [(2021) 63 Cal.App.5th 689 (*Powell*)] explained the elements as follows: '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of

that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' (*Powell, supra*, 63 Cal.App.5th at pp. 712–713, fn. omitted; see *id.* at p. 713, fn. 27 ['The relevant act is the act that proximately causes death.'], [citations].)"  (*Reyes, supra*, 14 Cal.5th at pp. 990–991.)

C.    *Analysis*

Defendant contends that "the record failed to demonstrate a sufficient factual basis for concluding [he] directly aided and abetted second degree murder.  While [he] engaged in a fist fight with Perez, or a 'boxing' as the witnesses referred to it, this was not sufficient to support a finding that he subjectively appreciated the risk of danger to human life *and* acted to consciously disregard that risk."

Defendant does not dispute that there was substantial evidence that a direct perpetrator, Carino, engaged in an armed confrontation in the parking lot during which he shot the victims. He disputes that substantial evidence supported a finding that he had "either the actus reus or mens rea required for aiding and abetting any implied malice murder."

1.     Actus Reus

Contrary to defendant's assertion, substantial evidence supported a finding that he aided in the commission of Carino's life-threatening acts in the bar's parking lot.  Defendant admitted that while he was in the truck, Carino, who had already armed himself with a revolver, handed him a loaded semi-automatic handgun.[4]  He also admitted engaging in a fist fight with one or more of the men in the parking lot and kicking one of them when he was down.  During the melee that followed, Carino tried multiple times to hit Rojas with the revolver, and defendant either dropped his weapon or it was taken from him.  Once Rojas acquired control of defendant's gun, Carino shot both Perez and Rojas.

That evidence supported a reasonable inference Carino engaged in a late-night confrontation with a group of men in a bar parking lot while armed with a loaded weapon, conduct which was life-endangering.  (See e.g. *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 109–110 [where the defendant obtains a lethal weapon and then engages the victim in an argument, malice may be implied from the circumstances leading to the killing].)  It also showed that defendant acted in furtherance of the commission of Carino's act by exiting the truck armed with a handgun provided by Carino, and then engaging in a fist fight during which he lost control of the weapon.  (*Ibid*.)

---

[4]     A loaded semi-automatic handgun was recovered from the truck after it was stopped and Carino and defendant were arrested.  A Los Angeles County Sheriff's Department criminalist determined that the gun was operational.

2.    Mens Rea

Substantial evidence also supported a finding that defendant (1) was aware that Carino intended to engage in a life-endangering threatening act; (2) harbored the intent to aid Carino in the commission of that act; (3) knew their conduct was life-endangering; (3) and he acted in conscious disregard for human life.  (See *People v. Baker* (2002) 98 Cal.App.4th 1217, 1223 ["'Intent is a state of mind.  A defendant's state of mind must, in the absence of the defendant's own statements, be established by the circumstances surrounding the commission of the offense.'  [Citations.]".)

As explained, defendant knew Carino was armed with a revolver before he exited the truck, he accepted the loaded semi-automatic weapon Carino offered him, and he knew that he and the others were "about to fight."  According to Carino, defendant chambered a round in the semi-automatic weapon immediately upon getting out of the truck.  In the fight that ensued, defendant lost control of his gun, but after Carino shot the victims, defendant retrieved the gun, reentered the truck, gave the gun back to Carino, and fled the scene with him.  This evidence supported a finding that defendant knew that his, and Carino's, conduct during the incident in the parking lot was life-endangering and he acted in conscious disregard for human life.  (See *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [among the factors which may be considered in determining whether a person has knowingly aided and abetted the commission of a crime are "'presence at the scene of the crime, companionship, and conduct before and after the offense'"].)

11

On this record, we conclude that substantial evidence supported the trial court's finding that defendant was guilty beyond a reasonable doubt as a direct aider and abettor of the murders committed by Carino.  The court did not err by denying the section 1172.6 petition.

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

12