Filed 11/4/14  P. v. Mercer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059792 |
| v. | (Super.Ct.No. FVI1201519) |
| ANTHONY CHARLES MERCER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed with directions.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant appeals from the trial court's order that he pay $10,560.65 in victim restitution.  Defendant argues the record contains insufficient evidence that his actions

1

caused the migraine headaches for which the victim sought treatment, the guilty plea to attempted battery does not provide a factual basis for the restitution order, and the restitution order improperly provides the victim with a windfall. As discussed below, we reject each of these contentions but direct the trial court to correct the abstract of judgment to reflect the actual amount of restitution the trial court ordered—$8,391.30.

## FACTS[1] AND PROCEDURE

On June 11, 2012, defendant in some way attacked Ms. Mercer, who was at the time his wife. On June 12, 2012, the People filed a felony complaint alleging in count 1 corporal injury upon a spouse resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a));[2] in count 2 criminal threats (§ 422); and in count 3 assault with a deadly weapon (§ 245, subd. (a)(1)). The People also alleged defendant had a prior serious felony conviction from 1983 for attempted burglary of an inhabited building. (§§ 667, subd. (a)(1), 664/459.)

On March 7, 2013, defendant pled guilty to attempted battery with serious bodily injury (§§ 664 and 243, subd. (d)) and admitted to having a "strike" prior (§§ 667, subds. (b)-(i), 1192.7, subd. (c)).

On July 19, 2013, the trial court sentence defendant to the midterm of 18 months, doubled to three years for the strike prior. The court credited defendant with 404 days of actual time plus 404 days of conduct credit for a total of 808 days of pre-sentence custody credit. Pursuant to a restitution memo prepared by the probation department, the court

---

[1] Few facts about the charged crimes are found in the record.

made, and then stayed pending future hearings, an order of restitution to the victim in the amount of $2,752.15. The memo states the amount was for "storage fees, telephone number change, and hospital and medical costs due to her incident injuries." Defendant requested a formal hearing to challenge the restitution order and asked that Ms. Mercer be ordered to appear. The court referred the matter to the Probation Department for a further restitution memo with documentation.

At the restitution hearing held on September 27, 2013, Ms. Mercer testified that she had paid $1,742 in storage fees for a unit that stored both her own property and defendant's property. The restitution memo filed September 18, 2013, included documentation of that expense from the storage company. On cross-examination, Ms. Mercer testified that "95 percent of . . . the property [in the storage unit] was mine." Ms. Mercer also testified that she went to the hospital emergency room on June 30, 2012, "Because of a major migraine that started from the incident on June 11." She provided two bills for that day, for $1,645.32 and $3,158.22. The bills were for services including the emergency room visit, a "spine cervical" and a CAT scan, and for prescription drugs. Ms. Mercer testified that she went to the hospital emergency room again on July 7, 2012, for treatment of a migraine headache, and incurred a bill for $3,102.76. The bill for that date attached to the restitution memo showed an amount due of $3,122.76. Each of the three bills reflected a substantial discount for "private pay (cash)." On cross-examination by the defense, Ms. Mercer stated she had migraines for her entire life, usually triggered

---

**2** All section references are to the Penal Code unless otherwise indicated.

by light, but that they had stopped two years prior to the June 11, 2012 incident. Ms. Mercer stated the migraines were so bad that she was in tears during the second hospital visit. On redirect, she stated that the migraine headache began right after defendant assaulted her, and she believed the assault caused the migraine. The court asked the People for the total of the medical bills, which the People calculated at $7,926.30. The court told the parties it would have a decision on October 7, 2013. Defense counsel asked to have defendant present at that hearing because he needed to "recalculate his custody credits." The court agreed, and the People stated "We need to proceed with sentencing on that day."

At the hearing held on October 7, 2013, the People asked for a "Victim's Compensation Board" order of $450. The court awarded Ms. Mercer the full amount of her medical bills, denied the amount for storage, and ordered the $450 for the Victim's Compensation Board. The court did not state a total amount. The court also recalculated defendant's presentence custody credits at 484 actual, plus 484 conduct for a total of 968 days, and sentenced defendant to three years in prison. This appeal followed.

## DISCUSSION

1. *The Trial Court Properly Exercised its Discretion*

Defendant argues the trial court abused its discretion when it ordered restitution for Ms. Mercer's medical expenses on June 30 and July 11, 2012, because she did not prove by a preponderance of the evidence that her migraine headaches were caused by the attempted battery on June 11, 2012.

4

Section 1202.4, subdivision (f) provides that when a crime victim has suffered economic loss as a result of the defendant's conduct, "the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court . . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (B) Medical expenses." (§ 1202.4, subd. (f).) Subdivision (g) of section 1202.4 further states that "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record."

The word "loss," within the meaning of section 1202.4, "'"'must be construed broadly and liberally to uphold the voters' intent.' [Citation.] Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." [Citation.]' [Citation.] 'The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." [Citations.]' [Citation.]" (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 (*Moore*).) The burden of proof at a victim restitution hearing is by a

preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gamelli*).)

'"The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] '"When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court."' [Citations.]' [Citation.]" (*Moore, supra,* 177 Cal.App.4th at p. 1231.)

Here, the evidence that defendant caused Ms. Mercer's medical expenses is as follows. First, she testified that she visited a hospital emergency room on June 30, 2012 "Because of a major migraine that started from the incident on June 11." She testified similarly regarding the medical visit on July 11. Second, Ms. Mercer testified on cross-examination that, although she had suffered from migraine headaches for her entire life, she had not had one for two years prior to defendant's attack. "They didn't start until after he hit me." Third, she testified on redirect that the migraine headache had begun "right after" defendant assaulted her and she believed the assault caused the migraine. Fourth, Ms. Mercer provided copies of itemized medical bills for those dates.

Defendant's citation to *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1325, (*Holmberg*) on this point is unavailing. Defendant points to the opinion in *Holmberg* as an example of a presumed rule that a victim's uncorroborated claim that a defendant's criminal acts caused their injury is not sufficient to establish a prima facie showing. In fact, the *Holmberg* court held that a defendant convicted of concealing stolen property need not pay a financial services company $20 for computer cables believed to have been

stolen during a burglary, not because a victim's testimony as to causation was uncorroborated, but because "there was *no evidence* that defendant ever possessed the cables." (*Ibid*, italics added.) In contrast, there was significant, unrefuted evidence that defendant's criminal actions caused Ms. Mercer's medical bills—that is, Ms. Mercer's testimony and the bills themselves. Defendant presented no evidence, whatsoever, to contradict this testimonial and documentary evidence. Contrary to defendant's argument that Ms. Mercer's testimony was not enough to establish causation, the People point out some very relevant rules here. First, that "the testimony of one witness, if believed, is sufficient to prove any fact." (Evid. Code, § 411; *People v. Hunter* (1989) 49 Cal.3d 957, 977.) Second, that "[o]nce the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Gemelli, supra,* 161 Cal.App.4th at p. 1543.) Again, defendant presented no evidence to disprove Ms. Mercer's claim that her migraines were caused by defendant's attack on her, and her undisputed testimony was believable enough to establish a prima facie that she suffered economic losses caused by defendant's criminal actions. For these reasons, we cannot find that the trial court abused its discretion when it ordered defendant to pay Ms. Mercer's medical bills.

2. *Factual Basis for the Restitution Order*

In the alternative, defendant contends that, because he pled guilty to only attempted battery, and the elements of attempted battery do not include physical contact with the victim, his guilty plea does not provide a factual basis for the restitution order. Attempted battery with serious bodily injury is an unsuccessful attempt to use willful and

7

unlawful physical force against another person to inflict serious bodily injury upon him. (*People v. Lewis* (2004) 120 Cal.App.4th 882, 887.)

First, we note that, although defendant did not raise this issue during the restitution hearing, it amounts to a claim that the restitution amount was unauthorized by statute, and so is not waived. (*People v. Blackburn* (1999) 72 Cal.App.4th 1520.)

Defendant did not initial the *Harvey*[3] waiver as part of his plea bargain, which would have allowed the court to consider the dismissed counts when setting restitution. In addition, "section 1202.4 contains no provision that permits an award of restitution for losses caused by uncharged crimes when the defendant is sentenced to state prison." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1248.) The rationale that restitution may be imposed for economic loss not directly resulting from the commission of a crime for which a defendant has been convicted "is inapplicable to a nonprobationary sentence, in which the broad discretion to impose probationary conditions does not exist." (*Ibid*.) "[W]hen a defendant is sentenced to state prison, [Penal Code] section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted." (*Id*. at p. 1246 [Remanding for deletion a restitutionary award ordered for acts occurring before the crimes for which the defendants were convicted].)

"That is not to say that an acquittal on one count will preclude the imposition of a restitution order under all circumstances. We merely hold that in the nonprobation

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754 held that a sentencing court may not consider previously dismissed charges not transactionally related to the charges of which defendant is convicted.

8

context, a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted." (*People v. Percelle* (2005) 126 Cal.App.4th 164, 180.)

Here, the record shows a factual and rational basis for finding that defendant's crime of attempted battery caused the migraine headaches for which Ms. Mercer sought medical treatment. Ms. Mercer answered "Yes" when asked on direct examination, "Did this migraine that you had start right after you were assaulted in this case?" She also answered "Yes" when asked, "So it's your belief based upon that it started because you were assaulted." An assault is generally described as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240) An assault does not require actual contact with or injury to the victim, a trait that it shares with the attempted battery to which defendant pled guilty. Ms. Mercer also testified that she visited the emergency room "Because of a major migraine that started from the incident on June 11" and "It was a migraine caused from the incident, and it wasn't going away." Again, this testimony is consistent with the headaches being caused by defendant's attempt to batter her.

Although Ms. Mercer did testify that the migraines "didn't start until after he hit me," her testimony on the whole supports a reasonable finding that the headaches were caused by the overall "incident" in which defendant attacked her, not specifically by any physical touching or corporal injury inflicted by her then-husband. For this reason, we find the trial court did not err when it found a factual basis for the restitution order.

9

3. *The Restitution Order Was Not A Windfall*

Defendant argues the restitution order provided Ms. Mercer with a windfall. Specifically, he argues that she provided no receipts for medical treatment provided on the date of the charged incident, but only for emergency room visits that took place nineteen and thirty days after the incident, which suggests she asked for restitution for headaches from which she suffered her entire life. Defendant also attacks Ms. Mercer's credibility by pointing out that she initially requested only $2,752.12 in restitution.

These arguments are in fact an attack on the sufficiency of the evidence that defendant's attempted battery actually caused Ms. Mercer's migraines and subsequent medical expenses. We addressed this issue in part 1 of this opinion and concluded the trial court's restitution award is supported by the evidence.

4. *The Abstract of Judgment Must Be Corrected.*

Defendant argues, the People concede, and this court agrees, that the abstract of judgment must be corrected to reflect the actual amount of restitution ordered by the trial court. Although the abstract of judgment states the amount ordered is $10,560.50, the record shows the actual amount the trial court ordered is $8,391.30, specifically $7,926.30 for medical bills, plus $450 to the Victim's Compensation Board, apparently for mental health services rendered to Ms. Mercer, plus $15 to change Ms. Mercer's telephone number, an amount that defendant did not contest. "The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment. [Citations.]" (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) For this reason, we

10

direct the trial court to correct the abstract of judgment to show a restitution order of $8,391.30.

## DISPOSITION

The trial court is directed to correct the abstract of judgment to show a restitution order of $8,391.30, and to forward a corrected copy to the Department of Corrections.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

GAUT
J.*

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

*  Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.