Filed 1/29/21  P. v. Heredia CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B302832 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA116740) |
| v. | |
| LUIS HEREDIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Modified and, as so modified, affirmed.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy
Attorneys General for Plaintiff and Respondent.

———————————

A jury convicted appellant Luis Heredia of torture, injuring
a spouse, criminal threats, and attempted sodomy by force. On
appeal, Heredia contends that his torture conviction must be
reversed because the trial court declined to instruct the jury on
assault by means of force likely to produce great bodily injury as
a lesser included offense. We conclude that assault by means of
force likely to produce great bodily injury is not a lesser included
offense of torture, and, regardless, any instructional error was
harmless. Therefore, we affirm the conviction, but remand the
matter for the correction of sentencing errors.

**FACTUAL AND PROCEDURAL BACKGROUND**

Heredia was charged with torture (Pen. Code,[1] § 206;
count 1), injuring a spouse (§ 273.5, subd. (a); count 2), criminal
threats (§ 422, subd. (a); count 3), and sodomy by use of force
(§ 286, subd. (c)(2)(A); count 4). It was alleged that he personally
inflicted great bodily injury (§ 12022.7, subd. (e)), that he
incurred a prior serious or violent felony "strike" conviction
(§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and that he
incurred one prior serious felony conviction (§ 667, subd. (a)(1)).
A jury trial commenced in 2019.

---

[1]     All further undesignated statutory citations are to the
Penal Code.

2

## A. Prosecution Evidence

R.R. began a relationship with Heredia in 2014, and they had a three-year-old daughter. R.R. had two older sons who were not related to Heredia.

### 1. Prior Beatings

R.R. testified about three beatings that preceded the November 2017 beating which is the subject of this appeal.

In May 2015, after R.R. returned home from a party, Heredia punched her in the face and kicked her repeatedly. R.R. was pregnant at the time. She reconciled with Heredia before their daughter was born.

In June 2016, after seeing text messages R.R. exchanged with another man, Heredia called her a "whore" and "trash," and hit her in the face and arms while she held their newborn daughter. The beating lasted two or three hours.

In May 2017, after Heredia was told that R.R. had been "with other men," he violently beat her in a motel bathroom for four hours, and left her bleeding on the floor.

Photos taken after the beatings showed extensive swelling and bruising on R.R.'s face and body. R.R. reported the incidents to the police and obtained emergency protective orders, but no charges were filed.

### 2. Charged Crime: November 2017 Beating

On November 17, 2017, R.R. had reconciled with Heredia and they were living together. Around 1:00 a.m., Heredia came home and accused R.R. of being in a relationship with another man. He punched and kicked her in the head, legs, and stomach. R.R. begged him to have mercy, but he pushed her to the ground and called her a " 'whore.' " Heredia threatened to kill her if she did not disclose all of her relationships with other men. Heredia

3

was a construction worker and kept his tools in the apartment. He threatened to pull her nails out one by one with pliers. He squeezed one of her fingers with the pliers until her hand turned black and blue.

Heredia continued beating her until 7:00 a.m. He kicked her with his metal-tipped work boots, ordered her to undress, and threatened to take her out in public to embarrass her for being a "whore." Heredia forced R.R. to perform oral sex. He then forced her to bend down and performed anal sex, despite her screaming and "unbearable pain." Heredia told her she deserved the pain because she was a "whore." Afterwards, he ordered her to take a shower, and drove her to a store to buy medicine for her pain. When they returned to the apartment, Heredia took a bath and fell asleep around 1:00 or 2:00 p.m. R.R. grabbed her daughter and ran to a neighbor's apartment for help.

The jury was shown photos of R.R. taken after the police arrived and at the hospital. Her face was "beaten up" and "deformed," with bruises on her ears, neck, eyes, cheek, mouth, forehead, and chin. She also had bruises on her arms, chest, thighs, and back. R.R. was hospitalized for four days and suffered permanent vision changes. She had three broken ribs and a broken nose. The jury also heard recordings of R.R.'s interviews with police officers, which were generally consistent with her testimony.

Police officers testified that they encountered Heredia attempting to escape the apartment by climbing through a shattered window, and observed R.R. crying hysterically in her neighbor's apartment.

A forensic nurse who examined R.R. at the hospital testified that R.R. reported being physically and sexually

4

assaulted "with hands and objects," "punched and kicked," and anally raped. The nurse was "quite struck by the number of bruises on [R.R.'s] face and body," and recalled that R.R. was "extremely distraught." The nurse concluded that R.R.'s injuries were "consistent" with her account of the beating.

A photo of R.R.'s anus showed possible injury from sodomy. Tests performed on R.R. were positive for blood in the genital area, and negative for blood in the anus. No semen, sperm, or male DNA was detected, and two criminologists opined that such fluids could wash off during a shower.

### 3.    Cross-Examination of R.R.

R.R. admitted to several inconsistencies between her trial testimony and previous statements she had made during the investigation, at the preliminary hearing, or in her declaration supporting a U visa application.[2]  For example, she admitted she had falsely stated that she and Heredia were not living together in November 2017, and that she observed him using drugs. She admitted withholding from police that her son was present during the May 2015 beating. There were discrepancies in her statements regarding the motel room registration in May 2017, and Heredia's attire during the charged crime. R.R. could not explain why the declaration stated Heredia had raped her during the 2016 beating. She admitted she had lied about or omitted certain details because she did not want her children to be taken

---

[2]    A U visa authorizes victims of certain enumerated crimes—such as rape, domestic violence, and sexual assault—who cooperate in a criminal investigation to remain in the United States for up to four years. (8 C.F.R. § 214.14(a)(9), (b) & (g) (2020).)  R.R. admitted using fraudulent documents when she entered the United States, and she applied for a U visa in 2018.

away, and part of her still loved Heredia at the time. However, R.R. denied fabricating any of the beatings. She explained she signed the declaration without really understanding it.

## B. Defense Evidence

The defense theory was that R.R.'s testimony should not be credited because of the inconsistencies in her accounts of the four beatings and her motivation to lie for the prospect of obtaining a U visa. The attorney who prepared R.R.'s declaration in support of the U visa application testified that R.R. had verified the accuracy of its contents. Yet certain statements in the declaration were inconsistent with R.R.'s testimony at trial, including details about the exact sequence of events, the manner in which Heredia carried out the beatings, and the extent of R.R.'s relationship with Heredia.

## C. Jury Instructions

Defense counsel requested an instruction on assault by means of force likely to produce great bodily injury as a lesser included offense of torture. The court denied the request, concluding that assault by means of force likely to produce great bodily injury was not a lesser included offense of torture.

## D. Verdict and Sentencing

The jury convicted Heredia of torture, injuring a spouse, and criminal threats as charged, and of the lesser included offense of attempted sodomy. The jury found the great bodily injury enhancements true, and, in a bifurcated proceeding, the court found the prior conviction allegations true. Heredia was sentenced to a total prison term of 60 years to life, with 843 days of presentence custody credit, consisting of 733 actual days and 110 days of conduct credit.

Heredia timely appealed.

**DISCUSSION**

Heredia contends the trial court committed reversible error by denying his request for an assault instruction because: (1) assault by means of force likely to produce great bodily injury is a lesser included offense of torture, and (2) there was substantial evidence that Heredia committed assault by means of force likely to produce great bodily injury, but not torture. We disagree on both points and affirm. However, we remand the matter for the correction of certain sentencing errors.

**A.     The Trial Court Properly Declined to Instruct the Jury on Aggravated Assault.**

**1.     Assault by Force Likely to Produce Great Bodily Injury Is Not a Lesser Included Offense of Torture.**

Heredia argues that, under the elements test, assault by means of force likely to produce great bodily injury is a lesser included offense of torture.

"There are two tests for determining whether one offense is necessarily included in another: the 'elements' test and the 'accusatory pleading' test." (*People v. Ramirez* (2009) 45 Cal.4th 980, 984.) Under the elements test, we look strictly to the statutory elements of the offenses, not to the specific facts of the case. (*Id.* at p. 985.) We ask whether all of the elements of the lesser offense are included in the elements of the greater offense. (*People v. Martinez* (2005) 125 Cal.App.4th 1035, 1042.) In other words, "if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Lopez* (1998) 19 Cal.4th 282, 288; see also *People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)

The crime of torture is defined in section 206: "Every person who, with the intent to cause cruel or extreme pain and

7

suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture. [¶] The crime of torture does not require any proof that the victim suffered pain."[3] (§ 206.) Thus, torture has two elements: " '(1) the infliction of great bodily injury on another; and (2) the specific intent to cause cruel or extreme pain and suffering for revenge, extortion or persuasion or any sadistic purpose.' " (*People v. Burton* (2006) 143 Cal.App.4th 447, 451–452.) Relevant factors in discerning the specific intent to commit torture include: the severity of the wounds inflicted, the presence of scarring or disfigurement, whether the defendant made earlier threats to the victim, and whether the defendant focused the attack on a particularly vulnerable area. (*Id.* at p. 452.)

In contrast, a defining feature of the crime of assault by means of force likely to produce great bodily injury is, by its terms, the use of force. (See § 245, subd. (a)(4).) An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240; see also *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1344.) "One may commit an assault [by means of force likely to produce great bodily injury] without making actual physical contact with the person of the victim; because the statute focuses on . . . force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) Ultimately, "the decision turns on the nature of the force used." (*Id.* at p. 1035.)

---

[3]     Section 12022.7, subdivision (f), defines great bodily injury as "a significant or substantial physical injury."

Heredia argues that the infliction of "great bodily injury," which is an element of torture, necessarily requires the use of "force likely to produce great bodily injury," which defines aggravated assault.[4]  But the same argument was made and rejected in *People v. Hamlin* (2009) 170 Cal.App.4th 1412 (*Hamlin*).  Applying the elements test, the *Hamlin* court reasoned: "Torture requires actual infliction of great bodily injury, but it does not require that the injury be inflicted by *any* means of force, let alone by means of force likely to produce great bodily injury.  For example, a caretaker would be guilty of torturing an immobile person in his care if the caretaker, acting with the intent to cause extreme suffering for a sadistic purpose, deprived that person of food and water for an extended period of time, resulting in great bodily injury to the person.  In such a circumstance, the caretaker would have inflicted great bodily injury without using any force and thus would not be guilty of committing assault by means of force likely to produce great bodily injury.  Because the use of force is not a necessary element of the crime of torture, assault by means of force likely to produce great bodily injury is not a lesser included offense of torture."[5]

---

[4]  Although Heredia cites *People v. Miller* (2008) 164 Cal.App.4th 653, 662–663, for this proposition, that case explained the elements of assault without analyzing whether it was a lesser included offense of torture.

[5]  We find nothing in the *Hamlin* court's analysis to indicate it mistakenly believed, as Heredia contends, that "force likely to produce great bodily injury" requires physical contact with the victim.  In addition, Heredia cites no authority for his proposition that the deprivation of food and water is an "act of violence"

9

(*Id.* at p. 1456.) Similarly, in concluding battery was not a lesser included offense of torture, *People v. Lewis* reasoned, "[t]he statutory definition of torture does not require a direct use of touching, physical force, or violence, but instead is satisfied if the defendant, directly or indirectly, inflicts great bodily injury on the victim." (*People v. Lewis* (2004) 120 Cal.App.4th 882, 888.)

We adopt the reasoning of *Hamlin* and conclude that assault by means of force likely to produce great bodily injury is not a lesser included offense of torture, because torture can be committed by inflicting great bodily injury without any use of force. Therefore, we find no error in the trial court's refusal to provide the requested instruction.

### 2. Any Instructional Error Was Harmless.

"Any error in instructions on a lesser included offense in a noncapital case is subject to the [*People v. Watson* (1956) 46 Cal.2d 818, 836] standard of review requiring reversal only if it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of such error." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 796; *People v. Beltran* (2013) 56 Cal.4th 935, 955; *People v. Breverman* (1998) 19 Cal.4th 142, 177–178.) The test " 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the

_____

carried out by force. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" '[a]ppellate briefs must provide . . . legal authority for the positions taken' "].)

error of which the defendant complains affected the result.' " (*Beltran*, at p. 956, quoting *Breverman*, at p. 177.)

Even assuming the trial court should have instructed on assault by means of force likely to produce great bodily injury as a lesser included offense of torture, it was not reasonably probable the jury would have reached a different verdict. The evidence supporting a conviction for torture was overwhelming. In graphic detail, R.R. testified that Heredia beat her for seven hours while threatening to kill her if she did not disclose her relationships with other men, tried to take her fingernails off with pliers, kicked her with his metal-tipped work boots, forced her to have oral and anal sex despite her cries for mercy, and repeatedly called her a "whore" who deserved abuse and humiliation. R.R.'s testimony was corroborated by photos of her injuries, audio recordings of her interviews with police officers, and expert forensic testimony. The evidence established that R.R. was hospitalized for four days and sustained severe bruising, disfigurement, broken ribs, a broken nose, and injuries generally consistent with her testimony. Further, the November 2017 beating was preceded by three similarly motivated beatings. Thus, there was overwhelming evidence of Heredia's specific intent to inflict great bodily injury for revenge, persuasion, or a sadistic purpose, which "distinguishes the offense of torture from an aggravated assault." (See *People v. Pre* (2004) 117 Cal.App.4th 413, 423–424.)

In contrast, there was no evidence that Heredia only assaulted R.R., without the specific intent to commit torture. The only evidence the defense presented sought to undermine R.R.'s credibility by focusing on the inconsistences in her accounts of the four beatings, her admitted fabrication of statements made under

11

oath, and her omission of certain information during the investigation. But even if we disregarded the parts of R.R.'s testimony that were at issue, the evidence was still insufficient to prove that Heredia committed only an assault. R.R. testified that despite differences in her retelling of details and the precise sequence of events, she never fabricated the four beatings. The undisputed evidence consistently established that the November 2017 beating was motivated by Heredia's jealous rage, lasted several hours, involved the use of construction equipment to purposely inflict pain in vulnerable areas, left R.R. with severe injuries, and was executed as a cruel, sadistic punishment for her perceived infidelity. Thus, it is not reasonably probable that even if the court had provided the assault instruction, the jury would have found Heredia guilty only of aggravated assault, but not torture.[6] By reaching a guilty verdict on the torture count, the jury necessarily concluded that any inconsistencies and omissions in R.R.'s statements were not material to their determination of Heredia's guilt. Therefore, even assuming there was an instructional error, it was harmless.

## B.    The Trial Court Must Correct Sentencing Errors.

Both parties agree that the abstract of judgment and minute orders from November 20, 2019, and December 4, 2019, must be amended to correct a number of sentencing errors.

---

[6] It is of no consequence to Heredia's argument that the jury found Heredia guilty of the lesser included offense of attempted sodomy. Sodomy by use of force (§ 286, subd. (c)(2)(A)) and torture (§ 206) are separate, distinct crimes, and the jury's willingness to absolve Heredia of the greater offense of sodomy by force does not necessarily establish it disbelieved R.R.'s account of the November 2017 beating, as Heredia suggests.

12

First, Heredia is entitled to one additional day of actual presentence custody credit.  Heredia was arrested on November 17, 2017, and sentenced on November 20, 2019.  He was therefore entitled to 734 days of actual presentence custody credit, rather than the 733 days awarded to him.  (See *People v. Magallanes* (2009) 173 Cal.App.4th 529, 537.)

Second, the narcotics registration requirement imposed pursuant to Health and Safety Code section 11590—which has since been repealed—must be stricken.  (See Stats. 2019, ch. 580, § 2.)  Heredia was not convicted of any narcotics offenses, so the registration requirement was wrongly imposed.  (See *People v. Pinon* (2016) 6 Cal.App.5th 956, 969.)

Third, the abstract of judgment and minute orders must reflect the four $30 court assessments the trial court orally imposed pursuant to Government Code section 70373 for Heredia's four felony convictions.

## DISPOSITION

The matter is remanded for the following corrections in the November 20, 2019 and December 4, 2019 sentencing minute orders and the abstract of judgment: (1) one additional day of actual presentence custody credit must be awarded; (2) the narcotics registration requirement must be stricken; and (3) four $30 court assessments must be imposed pursuant to Government Code section 70373.  The clerk of the superior court shall prepare the amended minute orders and abstract of judgment reflecting these corrections, and deliver a copy to the Department of Corrections and Rehabilitation.  The judgment of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


LAVIN, J.


EGERTON, J.

14